JACOB BILLIG, Plaintiff, *v.* NELSON PROPERTIES, INC., Defendant.

Municipal Court of New York, Borough of Bronx, Second District,
January 25, 1938.

302

 

*Barnett E. Kopelman*, for the plaintiff.

*A. Peter Targum*, for the defendant.

LEVY, J. The defendant is the owner of a certain residential apartment building. By written lease it rented an apartment therein to the plaintiff. The agreed rent was seventy-five dollars monthly, payable on the first of each month. The lease expired September 30, 1937.

In July, 1937, the plaintiff notified the defendant that the lease would not be renewed upon its expiration. Also in July the plaintiff moved from the premises, leaving some few articles there. These were shortly thereafter removed, but the plaintiff left the keys with a neighbor for the double purpose of permitting the defendant access to the apartment for rental purposes (in accordance with the terms of the lease) and of permitting the neighbor to keep some of her belongings in the vacated apartment. In July, 1937, the defendant let the premises to a new tenant for a term to begin the following October 1, 1937.

The new tenant wanted the apartment painted and renovated before he moved in on October first. This the defendant agreed with the new tenant to do. The old tenant, the plaintiff, refused to surrender possession until September thirtieth, which he had a right to do, and this even though the plaintiff did not occupy the apartment himself in August or September.

The plaintiff, in July, had offered to pay the defendant $100 to be released from the lease for the months of August and September. This the defendant refused, knowing that it would be able to collect the full rent of $150 from the plaintiff. The plaintiff

did pay the defendant the rent for these two months in due course, the September rent being paid during the first week of that month.

Early in September, 1937, defendant asked the plaintiff to permit entry into the apartment so that it might, prior to October first, be painted and renovated for the new occupant. The plaintiff refused this permission unless the defendant paid for the privilege. This the defendant refused to do.

Instead, on September fourteenth, and after the apartment had been rented to the new tenant, the defendant procured the keys from the plaintiff's neighbor, and, without the knowledge or permission of the plaintiff, had duplicate keys made, and probably changed the lock, so that when the plaintiff sought to enter the apartment on September fifteenth he could not open it; and the superintendent of the building would not allow the plaintiff to go in without being accompanied by the superintendent. The defendant then proceeded, beginning September fifteenth, and for several days thereafter, to paint and renovate the apartment.

This action was then instituted to recover (1) $75 as damages for breach by the defendant of the lease, being the amount of the rent for the month of September, which had previously been paid by the plaintiff to the defendant; (2) $225 damages allegedly sustained by reason of defendant's trespass upon plaintiff's apartment and eviction therefrom; and (3) $225 damages, representing treble damages for alleged forcible entry or detainer.

The case was first tried before another justice of this court in December of 1937, and the complaint was dismissed upon motion at the close of the plaintiff's case. Thereafter the plaintiff duly moved for a new trial upon the alleged grounds that the court " misapprehended and misconstrued the facts " and " erred in its decision on the law." This motion was granted by my colleague over the defendant's opposition, the judgment was vacated and the trial set down *de novo*.

Section 535 of the Real Property Law provides for an " action for forcible entry or detainer," and entitles the successful plaintiff in such an action to treble damages. The plaintiff's cause of action to " recover $225, damages for forcible entry or detainer," was intended to invoke this statute.

This court clearly has jurisdiction to entertain an action under this section. The contrary decision of the City Court in *Mandel* v. *Fertig* (65 Misc. 310) may be disregarded in view of the determination of the Appellate Term in this department in the case of *Bierman* v. *Werstein* (72 Misc. 29). The statute, however, is inapplicable to the facts in the case at bar.

Section 535 of the Real Property Law provides: "Action for forcible entry or detainer; treble damages. If a person is disseized, ejected, or put out of real property, in a forcible manner; or after he has been put out, is held and kept out, by force, or by putting him in fear of personal violence, he is entitled to recover treble damages, in an action therefor against the wrong-doer."

The Legislature has thus penalized one who resorts to force in order to obtain possession of real property peacefully occupied by another. (*Isaacs* v. *Washougal Clothing Co., Inc.*, 233 App. Div. 568.) No such penalty has been provided by statute for surreptitious trespass as distinguished from forcible ejection. This statute, formerly section 1669 of the Code of Civil Procedure, applies only where "the force is unusual, tends to bring about a breach of the peace, and the entry is with a strong hand, or a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life and limb, or under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession." (*Arout* v. *Azar*, 219 App. Div. 260. See, also, *Gulish* v. *Johnston*, 206 id. 625; *Lewis* v. *Veen*, 222 id. 706.)

None of such conditions was present here.

That the plaintiff is entitled to some damages I have no doubt. A landlord has no right to enter upon demised premises without the tenant's permission. If the landlord does enter, and, as in this case, effectively ousts the tenant, and uses the premises for the landlord's own benefit, he cannot have his conduct sanctified by judicial determination. Tenants as well as owners are protected by the ancient maxim that a man's home is his castle. For the purposes of the present controversy, this apartment is none the less entitled to judicial protection because the tenant did not occupy it; he had paid the landlord for its occupancy for the entire month of September and was entitled to use it as he saw fit, or not to use it at all. The landlord was not, without the tenant's consent, entitled to make duplicate keys, to put on a new lock, to paint or renovate the apartment during that month.

The tenant did not give his consent. On the contrary, he refused it. Nor can permission be gleaned from the lease between the parties. That document, by its terms, as is usual, authorized the landlord to enter upon the demised premises to show the same to prospective new tenants or to make necessary repairs. The defendant's entry here, in September, was for neither purpose. The apartment had already been rerented the preceding July; and the painting for the new tenant was not a repair within the meaning of this clause in the lease.

That the defendant wanted to give possession to the new tenant on October first of a completely renovated apartment so that the defendant might comply with his agreement with the new tenant is no justification for this deprivation of the plaintiff's property. The only way in which the landlord in this case could have gone into the leased premises for this purpose was to pay the plaintiff for the privilege; and pay it now must.

In *Tinton Building Corp.* v. *Butler* (164 N. Y. Supp. 21) the defendant, while in occupancy as a monthly tenant, vacated after the commencement of the month for the rent of which suit was brought, and the plaintiff-landlord thereupon let the premises to another tenant. The Municipal Court awarded to the plaintiff only that portion of the rent that represented the period prior to his resumption of dominion by putting the new tenant in possession. The Appellate Term disagreed; it held that " as the rent for the month was due and payable on the 1st day of the month, *and there is no counterclaim*, the plaintiff must recover the rent for the entire month, *leaving the defendant to assert whatever rights he may have in an independent action.*" (Italics mine.) (See, also, *Manhattan Leasing Co.* v. *Weil*, 164 N. Y. Supp. 56.)

The present is such an independent action to which the learned Appellate Term referred and, in such an action, the plaintiff must succeed. How much the defendant must pay to the plaintiff in damages is not an easy question.

This court has jurisdiction, in an action for malicious and willful injury to property, to award other than actual damages. (*Reilly* v. *Sachs*, 151 Misc. 699.) At the close of the trial the plaintiff argued for exemplary or punitive damages. The defendant urged upon me that the plaintiff did not sue for them. Under one view of the law, it is not necessary that the complaint specifically ask for exemplary damages or smart money, if the tort is malicious. (*Korber* v. *Dime Savings Bank*, 134 App. Div. 149.) The second cause of action, as alleged in the oral complaint, and as amended at the trial, was to " recover damages in the sum of $225, sustained by plaintiff by reason of defendant's trespass and eviction." That might be deemed to cover the situation. I think, however, that it is the better practice to plead a demand for punitive damages. The plaintiff did specifically allege a cause of action for treble damages, and if the plaintiff intended to ask for exemplary damages *dehors* the forcible entry statute, the defendant should, before the close of the trial, have been apprised of the plaintiff's double-barreled theory. In any event, I shall not rest my determination on the matter of pleading. As the apartment was in fact vacant

at the time of the defendant's trespass, I do not feel inclined to award tl e plaintiff smart money in this case.

What then is the correct measure of damages under the facts in this case? The agreed monthly rental was seventy-five dollars. This sum the plaintiff paid to the defendant early in September. The landlord ousted the plaintiff on September fifteenth. Is the tenant entitled to recover back the whole month's rent, or is the amount of the tenant's damages limited to that half month for which the trespass and ouster occurred?

Counsel have submitted no authorities on this issue, nor has the independent research of the court disclosed any precise precedent. Two Appellate Term decisions may, however, be recognized as a guide in support of my own view of the matter.

In *Upright Co.* v. *Delson* (178 N. Y. Supp. 389) the landlord was the plaintiff and sued for September rent. The landlord's trespass occurred " on or about September 1st." The court held that there was such an occupation of the demised premises by the landlord as precludes him from recovering rent for the month of September.

In *Kaiser* v. *Marks* (115 N. Y. Supp. 119) the landlord sued for rent, and the tenant counterclaimed for damages for ouster. The trespass occurred " shortly after," " early in September," certainly after the first of the month. The value of the premises for the entire month of September was seventy-five dollars. The court, on appeal, reversed a judgment for the plaintiff-landlord and held that the defendant-tenant was entitled to judgment on his counterclaim for seventy-five dollars. The court said that the tenant was entitled " at least to an offset for such sum " of seventy-five dollars, the value of the premises for the entire month.

I agree. If the tenant occupies the premises for the first day of the month, he is liable for the entire month's rent, even if he were to vacate the premises the next day. Conversely, if the tenant is entitled to possession until the last day of the month, the landlord cannot improperly oust the tenant any earlier day during that month without becoming liable to the tenant for the entire month's rent as the value of the premises. In this respect, at least, the relationship of landlord and tenant should be made a mutual one. Until an appellate court disagrees with me, I propose to endeavor to make it mutual.

I grant judgment in favor of the plaintiff against the defendant in the sum of seventy-five dollars, with interest from October 1, 1937, to be computed by the clerk. Five days' stay of execution after entry and service of judgment.