No. 37,518

HELEN H. LITTLE, *Appellant*, v. CLARENCE SOWERS, *Appellee*.

(204 P. 2d 605)

Opinion filed April 9, 1949.

*George J. Little,* of Wichita, argued the cause, and was on the briefs for the appellant.

*Richard Hollingsworth,* of Wichita, argued the cause, and *Clarence R. Sowers,* of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an action to recover damages for abuse of

process. The appeal is from an order and judgment sustaining a demurrer to plaintiff's second amended petition.

The indisputable factual situation from which this controversy springs, as disclosed by the involved pleading, can be stated as follows:

The plaintiff and one G. Mitchell Jordan, at all times here involved, were each the owners of an undivided one-half interest in a tract of real estate located at 1015 E. First street in the city of Wichita, the title to which was acquired under and by virtue of the terms of the will of Mary A. Jordan, deceased, whose estate was closed in the probate court of Sedgwick county on September 23, 1943.

On January 31, 1945, G. Mitchell Jordan and the defendant, as his attorney, appeared in the probate court of Sedgwick county and made an oral application for the entry of a *nunc pro tunc* order in the Mary Jordan estate in support of which they represented that one George Little had been occupying the property above described for the last fifteen months and that the plaintiff, then known as Helen Holliday, should account and was indebted to G. Mitchell Jordan in the sum of $330. Thereupon, notwithstanding the estate of such named decedent had long since been closed, the probate court rendered what it termed a *nunc pro tunc* order and attempted to give Jordan a judgment against the plaintiff for the sum of $330 and a lien upon such real estate until the amount had been paid Jordan or the defendant.

Later, and on December 1, 1945, the same parties appeared before the same court and made application for what they termed another *nunc pro tunc* order in the Mary Jordan estate. On this occasion they represented that G. Mitchell Jordan had acted as custodian and caretaker for the property heretofore described from September 10, 1943, to January 20, 1944, and asserted that by reason thereof plaintiff was indebted to him in the sum of $95. On the same date, and as requested in such application, the probate court rendered what it again described as a *nunc pro tunc* order in the Mary Jordan estate, this time attempting to give Jordan a judgment against plaintiff for $95 and an additional lien against the same real estate until that amount was paid Jordan or the defendant.

The two applications for *nunc pro tunc* orders heretofore mentioned did not purport to refer or have application to orders or

judgments theretofore rendered in proceedings pending in the probate court of Sedgwick county in connection with the Mary Jordan estate. They were based entirely upon indebtedness allegedly due G. Mitchell Jordan from the plaintiff personally and the orders executed by the probate court in connection therewith disclose on their face that they were not *nunc pro tunc* orders relating to the estate of Mary Jordan but were in fact orders and judgments purportedly rendered in favor of G. Mitchell Jordan and against the plaintiff for purely personal obligations incurred by the latter with respect to matters and things transpiring after there had been a final settlement and closing of such estate.

On February 6, 1945, the defendant and Jordan filed a certified copy of the purported *nunc pro tunc* judgment first rendered by the probate court in the office of the clerk of the district court of Sedgwick county and caused an execution to be issued thereon, wherein the sheriff of such county was directed to levy on plaintiff's property. Thereafter, and on May 5, 1945, pursuant to the direction of that instrument, such sheriff levied on the heretofore described real estate belonging to plaintiff and only refrained from selling it because restrained from so doing in an injunction proceeding instituted by plaintiff in the district court.

Later, on the 4th day of December, 1945, the defendant and Jordan procured a certified copy of the purported *nunc pro tunc* order and judgment rendered by the probate court on December 1, 1945, and filed such copy in the office of the clerk of the district court of Sedgwick county as a lien on plaintiff's real estate.

Subsequently the plaintiff filed an application in the probate court of Sedgwick county to set aside both *nunc pro tunc* orders. Upon the hearing on such application, at which G. Mitchell Jordan and the defendant as his atorney were present, that tribunal set aside the two orders, remitted all costs arising by reason of the rendition thereof and in connection therewith made the following findings:

"That at the time said orders were issued—they were filed and presented by G. Mitchell Jordan and his Attorney, Clarence Sowers, in good faith and that no false statements were made to the Court.

"The Court further finds that both of said Orders should be set aside, and It Is, Therefore, Ordered, Adjudged and Decreed, that the *Nunc Pro Tunc* Order of this Court issued January 31st, 1945, recorded in Book 423, at page 426, of the records of this Court, in which G. Mitchell Jordan was granted judgment against Helen Holliday in the sum of $330.00, be and the same is set aside and held for naught; and That the *Nunc Pro Tunc* Order of this Court issued December 1st, 1945, recorded in Book 432, at page 225, thereof,

in which G. Mitchell Jordan was granted a judgment against Helen Holliday in the sum of $95.00, be, and the same is set aside and held for naught."

The pleading now under consideration contains two causes of action. The first is based upon the defendant's conduct and action with respect to the first order issued by the probate court while the second relates to his activities in connection with the second. However, the factual situation heretofore described has equal application to each. In addition such pleading contains charges, in substance to the effect defendant with full knowledge of all facts, heretofore related, for the purpose of extorting money from plaintiff which she did not owe and harassing and opressing her until she paid the amount so claimed by him and his coconspirator, G. Mitchell Jordan, not only assisted in procuring the rendition of the two void judgments in the probate court but filed certified copies of each in the office of the clerk of the district court and thereafter (1) caused an execution to issue on the judgment first rendered and a levy to be made on plaintiff's real estate and (2) was responsible for the second judgment remaining on file in the office of such clerk as a lien thereon.

Defendant's demurrer to the foregoing amended petition was sustained on the grounds therein stated, namely, that such pleading failed to state a cause of action in favor of plaintiff and against the defendant for the reason it affirmatively showed on its face plaintiff could not recover.

For convenience we will first note the contentions advanced by appellee in support of the trial court's ruling. His first point is that allegations in the pleading to the effect defendant unlawfully procured the judge of the probate court to sign the *nunc pro tunc* orders and file the same for record in that court without notice to plaintiff and without offering any evidence in support thereof are not such statements of ultimate fact as will support either cause of action. So what? We have not deemed such allegations of sufficient importance to justify their inclusion in our factual statement. Appellee's position on this point entirely overlooks the fact that the manner in which he obtained the involved orders and judgments is at the most merely an incident to be considered in determining whether their use after they were once procured resulted in abuse of process.

Appellee next points to the probate court's order, heretofore quoted, setting aside the two *nunc pro tunc* orders, which was at-

tached to appellant's amended petition and made a part thereof by reference, and insists that she is estopped from asserting a cause of action based on the procuring of such orders by reason of the probate court's finding that at the time such orders were made they were filed and presented by G. Mitchell Jordan and the appellee in good faith and without the making of false statements. In support of his positon he cites several of our cases dealing with suits on written instruments and holding that where a copy of such an instrument is attached to and made a part of a petition it controls all general recitals of the petition at variance with such copy. The short and simple answer to this contention is to be found in our conclusion the instant action is founded on abuse of process and not upon the manner in which the orders were obtained. But even if this were not so the contention would nevertheless be devoid of merit for a number of reasons. In the first place the probate court's findings with respect to the nature of the statements made by appellee was extraneous and not properly a part of the decree setting aside the *nunc pro tunc* orders and appellee is not precluded or barred from attempting here to establish such statements were false. In the next, a claim of good faith is no excuse for consequences resulting from the performance of a wrongful act. Lastly, we are not here concerned with a suit on a written instrument at variance with the allegations of a pleading and the decisions on which appellee relies have no application.

Finally it is argued that inasmuch as the case at bar was not instituted until February 19, 1947, more than two years after February 6, 1945, the date on which execution was caused to be issued on the first *nunc pro tunc* order, any cause of action the appellant may have with respect thereto is barred by the statute of limitations (G. S. 1935, 60-306 [3]). This contention is also devoid of merit. When a writ of execution is wrongfully levied a right of action accrues at the time of the levy (33 C. J. S. 841 § 457 [c]; 50 C. J. 620 § 386; 1 Am. Jur. 192 § 36; American Digest System "execution" § 468). Under the allegations of the petition appellant's cause of action, so far as this particular order is concerned, is based upon the levy made on May 5, 1945.

We fail to find anything in the appellee's contentions or from our own examination of the second amended petition which will sustain the trial court's ruling on the demurrer. While such pleading is not expertly drafted and, as appellee points out, is replete

with conclusions and unnecessary allegations it nevertheless contains averments, to which we have heretofore referred, clearly charging and disclosing the procurance of void orders in probate court by appellee and the issuance of process thereon to appellant's injury and damage. A pleading containing averments of that character, in our opinion, giving its allegations the benefit of inferences to which they were entitled in ruling on a demurrer, states a cause of action for abuse of process. A party is not protected from the consequences of his action in procuring a wrongful execution upon a void judgment (*Allen and Barton v. Corlew,* 10 Kan. 70; *Duff v. Read,* 74 Kan. 730, 734, 88 Pac. 263; 21 Am. Jur. 309 § 646; 33 C. J. S. 836 § 452). Analogous reasoning compels a similar conclusion with respect to responsibility for his action in filing a certified copy of such a judgment in the office of the clerk of the district court under authority of G. S. 1935, 60-3126, as a lien on real estate.

The judgment of the district court is reversed and the cause remanded with instructions to set aside its ruling on the demurrer, permit issues to be joined and proceed with the cause.