Maurice Wahl, J.
These two summary nonpayment proceedings were tried together, but, by consent, separate decisions were to be rendered.
The tenant herein, Virginia McManus, admittedly known as Karen Moore, and by other names, testified she was the tenant under leases covering the two apartments in separate buildings, namely, 34 East 62nd Street and 64 East 66th Street, both in the Borough of Manhattan. It was conceded that the rent had not been paid for the periods stated in the petition.
An answer and counterclaims were interposed in each proceeding. The counterclaims, in essence, demanded judgment (a) $2,000 for conversion of her clothes and other personal property; (b) security deposit of $135 for the apartment at 66th Street and security deposit of $225 for the apartment at 62nd Street; and (c) $3,000 for damage for breach of warranty of quiet enjoyment.
The landlord is the owner of both buildings. There is no dispute as to the nonpayment of rent for the 62nd Street apartment and, therefore, the landlord is entitled to a final order in proceeding No. 30/1959 and a decision in his favor for the rental for the month of January in the sum of $225. The counterclaim as to the security deposit in this proceeding is dismissed without prejudice as the claim is premature.
The tenant McManus testified that she possessed academic degrees of B. A. and M. A. and that she was striving to obtain her doctoral degree; that she was a resident of Chicago, Illinois, and had come to New York expressly to attend this trial and is supporting herself by writing for educational periodicals. She made a favorable impression as a witness. Her testimony as to the value of her clothes, etc., which were allegedly taken during the period when she was locked out by the landlord from the apartment at 66th Street was over $2,000. This matter of exclusion is discussed infra.
The landlord, having seen fit to assume dominion of the apartment by changing the lock and retaining the key, was responsible for any actual property loss under the circumstances. (Filby v. Gaden, 275 App. Div. 847.)
However, any doubt that this court may have had regarding her veracity was eradicated, for, within the week after the final *204 hearing before this court, she was arrested again on the same charge of prostitution of which once before she had been acquitted. Therefore, her embellished tale as to her livelihood and ambition was unworthy of belief.
Ordinarily, neither the notoriety of a litigant to an action, nor additional information from newspapers or other media, should have any legal effect on a court; such knowledge is not evidence and has not been subject to scrutiny of cross-examination. However, where there is doubt and the court is still in the process of deliberating, it may take cognizance of a fact, either notorious or otherwise, in determining a matter of veracity. In October, 1958, the tenant had been arrested with one Garfield. The latter was convicted and served time in jail. During the trial before this court, Mrs. Garfield appeared as an observer. Subsequently, and a few days after the trial, the defendant and the Garfield woman were again arrested on a prostitution charge. Suspicion fortified by stronger suspicion is sufficient to justify a detrimental conclusion in a civil proceeding. This court is disinclined to believe her story as to the theft of her personal property. Falsus in uno, falsus in omnibus. The counterclaim for the theft or conversion of her clothes and personal property is dismissed on the merits.
The tenant’s claim to recover damages in the sum of $3,000 for breach of warranty of quiet enjoyment stands on another plane. During the trial, this claim was considered as a trespass to her personal rights.
The landlord unashamedly testified that he made an opening in the window of the tenant’s ground floor apartment at 66th Street and, by peeking, beheld many things which caused him vexation and chagrin, and that at the same period of time, in the middle of December, he noticed a great deal of activity in both apartments and an influx of masculinity, and he concluded that prostitution was the tenant’s source of income. He therefore took the law in his own hands and placed a lock upon the tenant’s apartment.
The action of the landlord in peeking and padlocking the apartment cannot be condoned, even though he may have acted in good faith. He openly charged her with being a woman of very loose morals. Assuming all that he says is true, and that he observed what he recounted in court graphically, his acts were improper and lawless. One must not take the law into his own hands. Justice is indispensable in our society and its importance is so great that even those who are evil-minded are entitled to its consideration. A truly great Englishman once stated that if the rights of the poorest Hindu on the banks of the Ganges *205 are impaired, then the noblest lord in the British Empire may well tremble and be concerned for his own rights. Hence, to permit an infringement of the rights of the iniquitous is a lessening of the rights of the virtuous. The sun also shines on the wicked. The monetary damage, however, cannot be the same for one who bears an unblemished reputation as distinguished from the person who has deviated from the path of rectitude. A tarnished jeAvel is less valuable.
This court holds that for his unlawful behavior, the landlord may not recover the rent for January, 1959 on the 66th Street apartment (Billig v. Nelson Properties, 166 Misc. 301) that the tenant is entitled to the return of her deposit of $135 on that apartment and, further that for the invasion of her rights, she is entitled to the nominal sum of $75.
A final order will be entered for the tenant on the 66th Street apartment, dismissing the landlord’s petition, and judgment will be decreed in her favor for the security deposit of $135 plus $75 for damages because of the landlord’s trespass, a total of $210.