Charles H. Coheh, J.
This ease involves two parties which had no dealings with one another prior to the events which led up to this lawsuit, and whose only connection was through a conduit, a bakery, as to which each apparently lost money, with each using this lawsuit in an effort to recoup those losses from one another. Plaintiff was the assignee of a security interest in chattels, fixtures, equipment and merchandise of the bakery (■the “ chattels ”). Defendant was the landlord of the bakery premises. What follows is the not uncommon .story of a fight between a holder of a security interest and a landlord over chattels left at the premises.
On June 5, 1970, B & A Bake Shop, Inc. (“ B & A ”) gave a security interest to 70-43 Bake Shop Inc.. (“70-43”) in the chattels located at 7043 Parsons Blvd. in Queens as security for a recited indebtedness of $21,800 owing from B & A to 70-43. The security agreement .states that it was given to secure part of the purchase price of the chattels and for the lease of the *509 premises. Appropriate financing statements were filed with the New York Secretary of State and the Queens County Register. At the same time, 70-43 assumed two leases of the premises leased by defendant as landlord.
On May 6, 1971, 70-43 assigned its security interest to plaintiff, which was in the bakery supply and equipment business. Plaintiff claims it paid $3,000 for this security interest. Within a few days thereafter, appropriate financing statements were filed with the New York Secretary of State and the Queens County Register. There being a default in the security agreement, and plaintiff having been given possession of the chattels, an auction sale of the chattels was held on May 17, 1971 at which sale plaintiff bought the chattels in a one-lot bid. An inconspicuous notice of this sale was published in the Long Island Press on May 12,1971. A copy of this notice was attached to the bill of sale issued by the auctioneer to plaintiff. While the bill of sale recites a high bid of $3,000 by plaintiff “ the receipt whereof is hereby acknowledged ’ ’, apparently no money was actually paid at this point since the sum bid was well below the amount of the outstanding indebtedness secured in accordance with the security agreement and there was no point in plaintiff paying money to itself. By virtue of this sale, plaintiff, which had a security interest in the chattels by assignment, received title.
Thereafter, plaintiff attempted to get another bakery business into the premises, but was unsuccessful. Plaintiff then prepared to sell the chattels at an auction sale, using the same auctioneer it had used before. The chattels were lotted and prepared for sale. Fairly large notices of sale were placed in the New York Times. At this point, defendant, which had been quiescent, apparently hoping that a new bakery tenant could be found, began, to put it mildly, to stir. This auction sale took place on June 15, 1971, despite some attempts by defendant to interfere. Before all of the chattels could be removed, defendant, a day or two after the sale, put a lock on the bakery door and prevented removal of chattels still there. This forced plaintiff to get a court order, entered ex parte under the caption of this case on July 12, 1971, which order directed that a marshal seize from the defendant and deliver to plaintiff certain described items consisting of a mixer, a refrigerator, two block tables, two wall cases and two ovens. On July 15, 1971, plaintiff entered the premises with the aid of a marshal. It found and removed the mixer and the two block tables, although the mixer accessories, along with the two wall cases and the refrigerator’s compressor, were missing. Before the two ovens could be *510 removed and before defendant received a marshal’s certificate giving it possession of the premises, the defendant again put its lock on the door.
In this action brought by plaintiff for the recovery of chattels, a determination of the rights of the parties in accordance with CPLR 7108 must be made. A further determination must-be made concerning defendant’s counterclaim whereby, on one hand, defendant claims damages for the value of certain chattels plaintiff removed (which also involves a determination under CPLR 7108) and, on the other hand, defendant claims damages arising out of the failure of plaintiff to remove certain other chattels.
It is difficult to find a legal basis for defendant’s interference with plaintiff’s rights as owner of the chattels. While defendant was a creditor -of 70-43, which in June of 1971 owed it five months ’ rent, a simple creditor has no rights in property of its debtor. That such a creditor was a landlord would not give it any rights in property of its tenant. As pointed out in Scott v. Browning Business Serv. (175 Misc. 630), a landlord’s common-law lien on a tenant’s property was abolished in New York with the abolition of the right to distress in 1846. Thus, even if defendant could be regarded as a creditor-landlord of plaintiff, it had no rights in property of plaintiff.
Having no basis for its own unauthorized conduct, defendant has belatedly attacked plaintiff’s position by charging that the transfer of the security interest in the chattels by 70-43 to plaintiff was a fraudulent transfer made with actual intent to defraud in violation of section 276 of the Debtor and Creditor Law. Presumably, if defendant could succeed in this argument, the transfer of the security interest would be set aside (Debtor and Creditor Law, § 2£8, subd. 1, par. a) and, consequently, the foreclosure sale whereby plaintiff received title to the chattels, would also fall. Since this action is concerned with the right to possession (CPLR 7101) and not title, it is not entirely clear that defendant would prevail even if it could prove a fraudulent transfer. However, even assuming that defendant, a simple creditor of 70-43 and not a judgment creditor, were in a position to bring an action to set aside a fraudulent transfer or to assert such a fraudulent transfer as a defense — although it has not been pleaded — without joining the debtor as a party to the action (see Ranno v. Ranno, 2 Misc 2d 940; Gabbe v. Kleban Drug Corp., 6 Misc 2d 457), defendant has not proved that there was a transfer made with actual intent to defraud. The only evidence presented which related to this point was that the principal officers of 70-43 and plaintiff had been friendly for *511 many years; that plaintiff mast have known that 70-43 owed rent to defendant in view of their frequent conversations; that plaintiff did not present any writings to holster the oral testimony stating it paid $3,000 to 70-43 for the security interest; and that the chattels covered by the security interest were worth somewhat more than $3,000. The court finds that this is insufficient to show an actual intent to defraud which must be proven by the party claiming it and cannot rest on mere suspicion. (First Nat. Bank of Batavia v. Frank, 1 A D 2d 539, affd. 3 N Y 2d 849; Lupia v. Lupia, 199 N. Y. S. 2d 733; Flier v. Hickey, 24 N. Y. S. 2d 573.)
This leaves defendant as a mere interloper which charged into a situation without the proverbial leg to stand .on. Defendant claims that plaintiff did not show it proof of ownership. The court finds that plaintiff amply demonstrated that it had a right to possession of the property.- Defendant certainly had constructive notice of plaintiff’s position as the owner of a security interest in the chattels by virtue -of the filed financing statements. But the real vice of defendant’s position is that it did not even have a claim of right to the chattels and yet it insisted on charging in. Since plaintiff in fact had title and -the right to possession of the chattels, defendant acted at its peril. Defendant had no right to interfere with the property of its tenant which owed it rent (Scott v. Browning Business Serv., 175 Misc. 630, supra), and certainly had no right to interfere with the property of plaintiff which was not even its tenant.
Defendant attempts to justify its conduct by stating that plaintiff was occupying its premises without paying rent. Such an argument is rather disingenuous. During the time when defendant thought that plaintiff might succeed in getting another bakery into the premises, it did nothing. It did not even institute summary proceedings against 70-43 until June 17, 1971 so that it did not get a final judgment of possession until July 2, 1971 or get a certificate of possession from a marshal until July 26, 1971. Perhaps defendant could have recovered use and occupation from plaintiff. Perhaps defendant could have brought an action to remove plaintiff from the premises. But it did neither. Instead, it, in effect, took the law in its own hands (Kobouroff v. Blake, 16 Misc 2d 202) and “wrongfully interfered. If defendant had not put its lock on the door in the first place, plaintiff probably would have been out of the premises promptly and defendant, if it had any rights against plaintiff, could have asserted them in a proper place, a court of law.
Plaintiff, as the assignee of -the security interest, had the right on default to take possession of the chattels. (Uniform Com *512 mercial Code, § 9-503.) It did so in the first instance peaceably without judicial process. After defendant put its lock on the door, it proceeded by court order. Defendant cites Fuentes v. Shevin (407 U. S. 67) for the proposition that the order of July 12,1971 was improper because it was granted without notice and therefore .some liability was incurred by plaintiff which regained possession of some of the chattels by virtue of that order. However, whether or not the order was properly issued would not affect plaintiff’s right to possession of the chattels since it had such right as a matter of substantive law pursuant to section 9-503 of the Uniform Commercial Code and as one who had become owner of the chattels. See Mendelson v. Irving (155 App. Div. 114), pointing out that if one had the right to take possession without legal process, one could not be deprived of that right by using legal process which turned out to be void. When defendant interfered with that right, it converted property of plaintiff and became liable to plaintiff for any resultant damages. (Congregation Anshe Sefard v. Title Guar. & Trust Co., 291 N. Y. 35; Kobouroff v. Blake, 16 Misc 2d 202, supra; Scott v. Browning Business Serv., 175 Misc. 630, supra.)
The court finds that, when plaintiff entered the premises pursuant to the July 12, 1971 court order, the mixer accessories of a value of $350 and two wall cases of a value of $425 were missing, along with the compressor of a refrigerator of a value of $75. Defendant, by putting its lock on the bakery door and assuming dominion .of the premises, “was responsible for any actual property loss ” (Kobouroff v. Blake, 16 Misc 2d 202, 203 supra), which, on these items, totals $850. In addition, plaintiff was required to spend $100 for a marshal’s fee and $56.40 for a locksmith, which it is also entitled to recover from defendant (cf. Scott v. Browning Business Serv., supra) for a total sum of $1,006.40. See also CPLR 7108 (subd. [a]), stating that ‘ ‘ Damages for wrongful taking or detention or for injury to or depreciation of a chattel may be awarded to a party. ’ ’
The court is not awarding any damages with respect to the wall ovens which plaintiff claims were sold for $2,000 and could not be delivered when defendant put its lock on the door the first time and, again, when it put its lock on the door the second time. While it is claimed that there was a private bid of $2,000 for the ovens, this does not appear in the record of sale of the auctioneer, who, it is noted, did not follow the requirements of section 25 of the General^ Business Law. After further considering the testimony of the witness Blandford on this point, the court finds that these ovens were .of no value, and that plaintiff is using the fortuitous circumstance that defendant wrong *513 fully converted the ovens as a chance to make some money at defendant’s expense.
In view of the foregoing, defendant’s counterclaim, to the extent that it seeks damages by reason of plaintiff having removed certain chattels, must be dismissed. However, defendant’s counterclaim, arising out of the failure of plaintiff to remove other chattels, including the ovens, must be considered further. As a general rule, as stated in Congregation Anshe Sefard v. Title Guar. & Trust Co. (291 N. Y. 35, 39), “ where a landlord must expend moneys for the removal of the goods of the tenant he may recover his reasonable expenses, on the theory of implied contract, since it is primarily the duty of the tenant to remove his own property ”.
Yet, even if this rule could be applied to one who, although not a tenant, had become the owner of chattels on. the premises, it cannot help defendant in this ease, because defendant, by wrongfully putting its locks on the bakery door, converted these chattels (Congregation Anshe Sefard v. Title Guar. & Trust Co., supra) and permitted plaintiff to abandon them. (Pierpoint v. Hoyt, 260 N. Y. 26, 30.) After preventing plaintiff from removing these chattels — even after plaintiff had secured a court order — defendant cannot now claim damages because plaintiff failed to remove them. An equivocal letter written by defendant to plaintiff about a month after defendant put a lock on the door for the second time did not have the effect of requiring plaintiff to remove chattels at that late date. Accordingly, defendant’s counterclaim must be dismissed in its entirety.
Submit judgment, on notice, awarding to plaintiff possession, or the value of, the chattels in question plus damages as awarded herein, all in accordance with CPLR 7108 (subd. [a]); and providing for the dismissal of defendant’s counterclaim; plus costs in favor of plaintiff.