Maurice Wahl. J.
To the Honorable Administrative Judge of the Civil Court of the City of New York:
The undersigned Referee was appointed as such pursuant to the order of Hon. Edward Thompson, Administrative Judge of the Civil Court of the City of New York, to hear and determine issues hereinafter set forth in 84 summary proceedings.
This is a multiple nonpayment proceeding, instituted by the owner of a high-rise dwelling which contains 350 apartments, to recover possession of the several apartments. Eighty-four separate proceedings were brought and it was stipulated by the parties that the Special Referee may try all of them together and that the evidence be applied to each proceeding, and that the Referee may render a separate judgment in each proceeding.
The tenants appearing by the same attorneys interposed three defenses, but. at the hearing two of them were withdrawn and the' only defense relied upon is defense of uninhabitability and *719 section 755 of the Real Property Actions and Proceedings Law, as set forth in paragraph 2 of the answer, in that the premises are not habitable because the petitioner knew or should have known for a long time prior to the commencement of these proceedings that its premises were and are being used for immoral purposes, thus interfering greatly with the quiet enjoyment of the premises by the respondents.
From the evidence it appears that, prior to the institution of these proceedings, many of the tenants formed the Westerly Tenants’ Association and this association met with the landlord and his attorneys, at which time the tenants presented complaints relating to unlawful activities by alleged prostitutes and procurers and the existence of so-called massage parlors in the building. The tenants were informed by the landlord’s attorneys that necessary steps would be taken to remove any undesirables from the premises and to seek to oust them, but it had to be done legally. Requests were made for rent, which the tenants refused to pay. Whereupon, the petitioner landlord instituted these proceedings. The rentals are on the average of $350 per apartment per month, and some of these apartments rent for about $600 per month. At the outset, about 110 tenants refused to pay their rents to the landlord. Presently, 84 tenants have not paid their monthly rentals for a period of two months.
The sole issue at the hearing was the matter of the defense to the petition set forth in paragraph 2 of the answer. (Vide, supra.)
The police officers produced by the tenants testified that the subject building, 300 West 55th Street, near Eighth Avenue, Borough of Manhattan, is in an area characterized by the police authorities as a high-crime area covering several streets in all directions. The police department’s record of arrests and convictions from January to October, 1972 included 12 arrests within the apartments and 9 convictions. No notifications of either of the arrests or convictions were given to the petitioner, as the police department had discontinued the use of notices. A number of the arrests were made in the lobby of the building itself and in front of the premises.
Some of the tenants testified concerning excessive “ traffic ” in and near the premises and of being accosted by men in or near these premises. Several tenants testified that some apartments were occupied by prostitutes but were unable or unwilling to identify apartments or name such occupants. In most instances such tenants had failed to complain about such incidents to either the police or to the landlord.
*720 It appears that in all instances' where tenants ’ leases came up for renewals, such tenants had renewed those leases. All of the tenants, who testified were in occupancy and there was no evidence that any tenant had vacated or abandoned the premises as a result of the conditions about which they complained. However, Father Maguna, a priest, testified that he had been ordered by his superiors to move from the premises and he intended to do so that very day.
Paragraph (b) of subdivision 1 of section 755 of the Beal Property Actions and Proceedings Law provides: ‘ ‘ Upon proper proof of the existence of a condition that is in the opinion of the court, such as to constructively evict the tenant from a portion of the. premises occupied by him ”.
The tenants’ contention of constructive eviction is unsupported by the proof adduced. The well-established law of this jurisdiction is that there cannot be a constructive eviction without an abandonment of possession by the tenant. (Herstein Co. v. Columbia Pictures Corp., 4 N Y 2d 117.)
The Court of Appeals in Boreel v. Lawton (90 N. Y. 293), expressed the general rule that an eviction is necessary to constitute a breach of the covenant of quiet enjoyment. A diminution of beneficial enjoyment cannot support a defense relying upon the breach of a covenant of quiet enjoyment. There must first be either an ouster or an abandonment. In this case, neither element is found and, accordingly, the breach of the covenant of quiet enjoyment is not well founded. There remains for consideration the reliance upon paragraph (a) of subdivision 1 of section 755 of the Beal Property Actions and Proceedings Law.
The evidence adduced at the trial fails to sustain, as a matter of law, that defense. Paragraph (a) of subdivision 1 of section 755 provides insofar as applicable as follows : “ Upon proper proof that a notice or order to remove or cease a nuisance or a violation or to make necessary and proper repairs has been made by the municipal department charged with the enforcement of the multiple dwelling law, the multiple residence law, or any other applicable local housing code, or officer or officers thereof charged with the supervision of such matters ’ ’.
No proof is offered to establish that there was any notice or order by any municipal department charged with the enforcement of the statutes referred to in paragraph (a) of subdivision 1 of .section 755.
Paragraph (b) of subdivision 1 of section 755 provides: “ Upon proper proof of the existence of a condition that is in *721 the opinion of the court, such as to constructively evict the tenant from a portion of the premises occupied by him, or is, likely to become, dangerous to life, health, or safety, the court before which the case is pending may stay proceedings to dispossess the tenant for non-payment of rent, or any action for rent or rental value.”
This provision of the law was held applicable to circumstances such as the constant breakdown of elevators, infestation by rodents, inadequate heat, or hot and cold water. (Matter of Himmel v. Chase Manhattan Bank, 47 Misc 2d 93.)
It was also made applicable in those circumstances where the landlord was ordered to correct the unsanitary conditions of the public corridors and stairs, and the inadequate lighting for fire passages. (Malek v. Perdina, 58 Misc 2d 960.)
This section does not require that the tenants vacate the premises. In such circumstances, the court may order the rent deposited with the clerk of the court until such time as the condition is corrected.
It may well be that if a landlord by deliberate and affirmative action invites, encourages or permits lessees to engage in illegal and immoral conduct on the premises, such conduct can be construed to result in an endangerment to the life, health or safety of the other occupants of the building. It should be on knowledge or upon a reckless disregard of the facts. (Goldberg Holding Corp. v. Blier, 60 Misc 2d 374.)
There is no showing that the landlord deliberately or affirmatively encouraged the activity about which the tenants complain. Indeed the police witnesses testified that although they recognized some of the occupants in some of the apartments they inspected to be persons who were known to be prostitutes or were then engaged in unlawful prostitution, the police did not make any arrests at the time of their inspections. In fact, there was no testimony whatsoever connecting the landlord with the presence on the premises of these objectionable individuals. The record is patently bare of any probative evidence that in any way connects the landlord with such acts, conduct or activities. It has become a way of life, unfortunately, in this city, where such activities are rampant, and the public is informed through all media that such is the condition in all areas of economic and social echelons. One must be realistic and take judicial note of such facts. However, that is- a far cry from producing probative and competent evidence to establish that those persons are of ill repute and that landlord had knowledge thereof and remained passive. The record at bar reveals that landlord *722 has co-operated or sought to do so with tenants to remedy this situation. Until the public authorities or the complaining tenants supply such evidence, it is obvious that any proceeding by the landlord would not be maintainable.
Whatever the public authorities are doing, e.g., as reported in the daily press, that certain buildings are public nuisances, is not applicable at bar. The landlord with a substantial investment hired a reputable rental agent to screen all applicants for rentals. No evidence has been produced to show or from which it may be inferred that rentals were knowingly made to such undesirable persons'.
The court once before took note of the inability of the police in this city to curb the incipient growth of criminal activity. Since the decision in New York City Housing Auth. v. Medlin (57 Misc 2d 145) cited in 1968, it cannot be said that conditions have improved.
The landlord could not be expected to react to general statements of illegal activity or to suspicions by tenants who, even upon this trial, refused to identify specific individuals about whom they complained.
What was said in Kobouroff v. Blake (16 Misc 2d 202, 204) is pertinent; namely, “ justice is indispensable in our society and its enforcement is so great that even those who are evil-minded are entitled to its consideration ”.
In 'short, even the wicked are entitled to their rights. The landlord here could not arbitrarily evict the alleged prostitutes and procurers.
It would be unconscionable to suspend the payment of rent until social conditions in this neighborhood improve. In fact, any such determination would be confiscatory, since it would necessarily occasion the inability of the landlord to meet the mortgage payments and the tax payments required in the operation of this building.
The landlord and his attorney both testified as to their desires to rid this building of any undesirable elements insofar as they were permitted by law.
The landlord seemingly has demonstrated his good faith in that regard and, under the circumstances in this case, a suspension of the payment of rent under section 755 is not warranted and judgment should be directed in favor of the landlord for the relief requested.
Final judgment for landlord against the 84 respondents. Five days ’ .stay upon written notice of the judgment to the respondents or their attorneys.