(644 P.2d 1371)
No. 53,565

ROLLAND H. HOOD, *Appellee,* v. GENE W. HAYNES and LOIS A. HAYNES, Husband and Wife, *Appellants.*

Opinion filed May 20, 1982.

*Kenneth E. Peery,* of Concordia, for the appellants.

*Larry S. Vernon,* of Vernon & Casado, of Concordia, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

FOTH, C.J.: Defendants appeal from the trial court's refusal to set aside a default judgment foreclosing two mortgages on several lots owned by them in the city of Concordia.

The chronology is as follows:

January 9, 1981, petition filed together with affidavit for service by publication.

February 2, 1981, service complete, answer date fixed as February 26, 1981.

February 26, 1981, motion for default judgment.

May 3 or 4, 1981, defendants have actual notice of the suit, although never served personally or by mail. Defendant Gene Haynes visits Concordia, examines the property and the court file.

June 2, 1981, present plaintiff, having bought the two mortgages, is substituted as a party.

June 5, 1981, defendant Gene Haynes writes a letter, described below, to the trial judge.

June 22, 1981, letter from Haynes, together with the judge's response, filed with clerk of the district court.

July 8, 1981, motion for default judgment, sustained the same day by journal entry of foreclosure reciting that defendants "are and remain wholly in default."

July 17, 1981, defendants' application to open default judgment, motion for leave to file answer and counterclaim.

August 12, 1981, order filed denying defendants all relief.

It is from this final order that defendants appeal. They urged three grounds below and reassert them here.

Two may be disposed of together. Under K.S.A. 60-260(*b*)(1) and (6) defendants claimed "excusable neglect" and "any other" grounds for relief; under 60-309(*a*) they claimed a right to reopen because service was by publication and they had no actual notice "in time to appear in court and make a defense." The trial court, we were told at argument, made oral findings on these issues but those findings were either not transcribed or, if they were, were not included in the record. We therefore must assume the findings were adequate to support the judgment. *Cf. Burch v. Dodge,* 4 Kan. App. 2d 503, Syl. ¶ 2, 608 P.2d 1032 (1980). Defendants in any event concede actual knowledge of the suit for more than two months before the default judgment was entered, yet did not seek to file any pleading. That fact alone could justify rejection of both these claims. Two months could be regarded as time to appear and defend under 60-309(*a*). *Cadwallader v. Lehman,* 202 Kan. 738, 451 P.2d 163 (1969). It could also, in the discretion of the trial court, be deemed to represent inexcusable neglect under 60-260(*b*). See *Jenkins v. Arnold,* 223 Kan. 298, 573 P.2d 1013 (1978); *Montez v. Tonkawa Village Apartments,* 215 Kan. 59, 523 P.2d 351 (1974).

The more serious question arises because no notice of the default judgment was given, as is required by K.S.A. 60-255(*a*) if the defaulting party has "appeared" in the action. The question is whether defendant's letter of June 5, 1981, officially filed more than two weeks before the default judgment, constitutes an "appearance."

The letter began:

"May I beg on the mercy of the court an audiance [*sic*] in the above matter; that I would like to be notified of any more activity on this case at the above address, in suficiant [*sic*] time to be present, if so deemed beneficial. Also that you would consider the setting aside of these mortgages at the hearing. These requests are made for the following reasons . . . ."

The letter goes on to recite an agreement to cancel one of the mortgages on a condition which defendant says he met, and an agreement that the other mortgagee would forbear — both matters which might be construed as defenses. It also sets up several complaints best categorized as counterclaims for conversion, fraud, and trespass. No copy was sent to plaintiff's counsel.

The trial court replied to Mr. Haynes in a short letter dated June 22, 1981, declining to give legal advice and urging Mr. Haynes to procure an attorney. Again, no copy was sent to plaintiff's counsel. (We were advised at oral argument that the original district court file was checked out to plaintiff's counsel at the time, so the physical filing was in a temporary file; plaintiff's counsel did not become aware of the correspondence until after judgment.)

Numerous cases discuss what constitutes an appearance, and two annotations deal with the subject: Annot., Appearance - Notice of Default Judgment, 73 A.L.R.3d 1250; Annot., Default Judgment - Appearance, 27 A.L.R. Fed. 620. The acts claimed to be appearances fall into several different categories:

1. The filing of some pleading or motion with the court in response to plaintiff's suit.

2. The defendant's physical presence in the court.

3. Informal communications between the parties or between the defendant and the court.

4. Negotiations for settlement between the parties.

In their analysis under any of these situations, but particularly when considering informal communications such as we have here, courts have given heavy weight to whether the party has indicated an "intent to defend." 6 Moores' Federal Practice and Procedure ¶ 55.05(3), p. 55-55, points out "a party may be deemed to have filed an appearance when there have been contacts between the plaintiff and the defaulting party that indicate the defaulting party intends to defend the suit." Moore cites the landmark case, *H. F. Livermore Corp. v. Atkiengesellschaft, Gebruder L.*, 432 F.2d 689 (D.C. Cir. 1970), for the proposition that an intention to defend the suit controls the decision. (There the parties entered into settlement negotiations in hopes of avoiding a contested suit.)

The two major cases in Kansas construing the word "appearance" employ a similar analysis. In *Sharp v. Sharp*, 196 Kan. 38,

40, 409 P.2d 1019 (1966), the court held a written request for a bill of particulars in an action for separate maintenance constituted an appearance, using these considerations:

"Broadly speaking, an appearance may be defined as an overt act by which a party comes into court and submits himself to its jurisdiction and is his first act therein (6 C.J.S., Appearances, § 1; 5 Am. Jur. 2d, Appearance, § 1). Although the traditional distinctions between a general and a special appearance have now largely lost their significance under our present code (see *Small v. Small,* 195 Kan. 531, 407 P.2d 491), most of our cases on the subject have dealt primarily with the problem of determining which kind of appearance resulted from a given action. Illustrative is *Meyer v. Schmidt,* 184 Kan. 21, 334 P.2d 345, in which no service was obtained on a named nonresident defendant. Later an attorney filed a motion for additional time to plead on behalf of this defendant. More than two years thereafter, the attorney having previously withdrawn for want of a fee, judgment was rendered against the defendant. This court held that the filing of the motion for additional time to plead constituted an appearance in the case for the purpose of conferring upon the court personal jurisdiction over such defendant."

The court thus refused to confine the definition of "appeared in the action" to the filing of a responsive pleading on the merits and went on to hold that the failure to give notice required reversal. 196 Kan. at 41-2.

Closer to our case, *Jones v. Main,* 196 Kan. 91, 410 P.2d 303 (1966), found an "appearance" when a garnishee simply filed with the court his copy of a garnishment summons and noted upon it he did not owe the original defendant any money. The court once again pointed to the difference between an "answer" and an "appearance" and cited with approval Gard's statement that a party obtains the right to three days' notice by appearing "*in any fashion.*" See Gard's Kansas C. of Civ. Proc. 2d Annot. § 60-255, p. 316. The court also recognized that it should look at the substance of defendant's acts and conduct, and not just the form of the action taken, in determining whether the defendant intended to defend:

"[W]e think it cannot be gainsaid that the underlying purpose of our statute, as is true of notice statutes generally, is to afford every litigant the opportunity to be heard in opposition to a claim made against him *once he has apprised his opponent, through court, of his denial of or resistance to the latter's claim.* In our opinion, Perfecto Torrez had given notice of his opposition to the plaintiffs' contention prior to the time judgment was entered against him. The written instrument which Perfecto filed with the clerk of the court, and which the clerk recorded in the case, was effectively designed to impart to the plaintiffs his claim that he was not indebted to the judgment debtor. Not only is it clear that the instrument was intended by Perfecto to communicate such information, but

plaintiffs' own counsel concedes that he had actual knowledge of the document and its contents at the very time he orally moved for judgment.

"Clearly, this garnishee defendant never intended for one moment to permit the inference that he owed Main so much as a farthing. That he may have been so unversed in the intricacies of the law as to omit from his answer certain formalities required by statute detracts not one whit from the authenticity of his intentions nor, for that matter, from the clear import of the language he actually employed. We believe the inference may safely be drawn that Perfecto, in his untutored way, did what he believed was necessary to make plain to the plaintiffs, through the processes of court, that he owed Main nothing. We believe further that *what Perfecto did to convey that intelligence to the Joneses fairly constituted an appearance* within the contemplation of the statute." 196 Kan. at 94. Emphasis added.

The appellee attempts to distinguish these cases by arguing that in each the defendant did some act contemplated by the statutes, as opposed to Mr. Haynes who manifested his opposition to the plaintiff's suit only through a letter to the judge. Many cases from other jurisdictions, however, find an "appearance" on the basis of far less indication of an intention to defend than that found in Haynes' letter to the trial judge.

Federal authorities generally use the "intention to defend" test in examining informal communications between the parties. *E.g., Charlton L. Davis & Co. P. C. v. Fedder Data Center*, 556 F.2d 308 (5th Cir. 1977) (defendant's attorney called and wrote plaintiff's attorney out of time, indicating his intent to defend and asking for extension of time; the letter and phone call constituted an appearance); *United States v. One 1966 Chevrolet Pickup Truck*, 56 F.R.D. 459 (E.D. Tex. 1972) (filing of claim and cost bond by attorney for owner in an IRS forfeiture proceeding, along with telephone calls, constituted an appearance and indicated a clear purpose to defend the suit). Compare with *Wilson v. Moore & Associates, Inc.*, 564 F.2d 366 (9th Cir. 1977) (informal communications can be sufficient but not when defendant had actual notice a delay would result in a default).

State decisions also recognize informal communications as an appearance. In *McClintock v. Serv-Us Bakers*, 103 Ariz. 72, 436 P.2d 891 (1968), the plaintiff issued writs of garnishment against the employer of the defendant. Within the answer period, the employer's sales manager filed letters with the justice of the peace denying any indebtedness to the employee (original defendant). The plaintiff took default judgment but on appeal the Supreme Court of Arizona, looking to substance and not form, held the

letters constituted a sufficient appearance under Rule 55. Compare *Austin v. State,* 10 Ariz. App. 474, 459 P.2d 753 (1969), where the nonresident defendant in a condemnation case, by letter to the presiding judge stated she would not be able to attend the hearing and in another stated she would have no objection to the state taking immediate possession of the property. Under those circumstances the court found no intent to make an "appearance."

In *Cockrell v. World's Finest Chocolate Co.,* 349 So.2d 1117 (Ala. 1977), the defendant sent a document to the court saying defendant's attorney would take action soon. This was held to be an "appearance" entitling defendant to notice under a similar rule even though defendant's attorney did nothing until judgment was taken six weeks later. The same reasoning was applied in *Carl's Constr. Inc. v. Gigliotti,* 40 Colo. App. 535, 577 P.2d 1107 (1978):

"Defendant, Joe Gigliotti, appeals the trial court's denial of his motion to set aside a default judgment. We reverse.

"On November 8, 1976, defendant was served with summons and complaint in Webb County, Texas. His answer was therefore due on December 8, 1976. C.R.C.P. 12(a). Sometime in mid-December, defendant, acting without counsel, *mailed to the court a letter which purported to be an answer and which set out a number of meritorious defenses.* Though the trial court received the letter on December 28, 1976, it was never filed since defendant did not tender a docket fee. Without further notice to defendant, the court granted plaintiff's motion for a default judgment on January 11, 1977.

"The first question we address is whether the letter is a sufficient 'appearance' under C.R.C.P. 55(b)(2) to entitle defendant to three days notice and a hearing. We hold that it is. As the Supreme Court said in *R.F. v. D.G.W.,* 192 Colo. 528, 560 P.2d 837 (1977):

" 'We note that we are not dealing with technical concepts of appearance as the word is used in analysis of jurisdiction over the person. . . . *Rather, we are concerned with a provision of the Rules of Civil Procedure which seeks to insure fairness by providing notice to a party who has expressed interest in defending a lawsuit brought against him.'*

"Here, the letter clearly indicated an intention on Gigliotti's part to defend, and the three-day notice requirement of C.R.C.P. 55(b)(2) was therefore triggered. *See Bankers Union Life Insurance Co. v. Fiocca,* 35 Colo. App. 306, 532 P.2d 57 (1975)." 40 Colo. App. at 536. Emphasis added.

*Franklin v. Bartas Realty, Inc.,* 95 Nev. 559, 598 P.2d 1147 (1979) reached a similar result in a real estate broker's suit for his commission. When the defendants, husband and wife, received the summons, the husband wrote the following letter to the plaintiff's attorney:

"Dear Sir:
I fail to recognize any obligation to you or your client, because I had no contractual relationship with your client.
                                        Yours Trully [*sic*],
                                        J. T. Franklin"

The court was never informed of this letter and default judgment was later taken. On appeal from the denial of a preliminary injunction to prevent execution on the judgment, the Nevada court reversed because defendants lacked knowledge of an impending default judgment, considered themselves "actively participating" in the case, and did not realize the legal insufficiency of their response.

See also *Hankins v. Cooper,* 551 S.W.2d 584, (Ky. App. 1977) (an unsigned document filed with the clerk denying the complaint and setting forth a type of counterclaim constituted an appearance "since it indicates the general intention of the Appellant to dispute the complaint"); *Taylor v. Triangle Porsche-Audi, Inc.,* 27 N.C. App. 711, 220 S.E.2d 806 (1975) (a letter from the defendant's registered service agent to the clerk of the court denying he still was the defendant's registered service agent constituted an appearance); *Petty v. Weyerhauser Co.,* 272 S.C. 282, 251 S.E.2d 735 (1979) (defendant's attorney called and acknowledged receipt of summons and complaint and by letter asked to consider the letter an informal notice of appearance— held a sufficient appearance). Compare with *Hansher v. Kaishian,* 79 Wis.2d 374, 255 N.W.2d 564 (1977) (letter not an appearance where it requested no action on part of the plaintiff or the court, did not reflect that the defendant considered himself a participant in the case; and did not acknowledge the lawsuit's existence). Even a telephone conversation has been held to be an appearance. Compare *Perdue v. Sherman,* 246 N.W.2d 491 (N.D. 1976), with *Booth v. Magee Carpet Co.,* 548 P.2d 1252 (Wyo. 1976).

Under these authorities we can only conclude that Haynes' letter of June 5, 1981, constituted an "appearance." In it he clearly recognized that he was "in court" and subject to the court's jurisdiction, and just as clearly indicated his defenses to the plaintiff's claims. Further, he specifically requested notice of further proceedings. We believe he was entitled to such notice under the mandate of K.S.A. 60-255.

The result is the judgment must be reversed and the case remanded with directions to rehear the motion for default judgment after statutory notice to defendants. Assuming the trial court adheres to its previous ruling prohibiting defendants from filing a responsive pleading out of time, defendants' role in such a hearing will be severly limited. See 10 Wright and Miller, Federal Practice and Procedure: Civil § 2688 (1973); Annot., 15 A.L.R.3d 586, § 5. They are nevertheless entitled to their day in court.

Reversed and remanded.