(752 P.2d 700)

No. 60,761

THE WELLSVILLE BANK, *Appellee,* v. STEVEN SUTTERBY and ANN SUTTERBY, *Appellants,* v. RICHARD MOHERMAN, *Third-Party Defendant-Appellee.*

Opinion filed March 24, 1988.

*Elizabeth A. Carson*, of Carson & Fields, of Overland Park, for the appellants.

*John L. Richeson*, of Anderson, Byrd & Richeson, of Ottawa, for the appellees.

*Leo L. Logan*, of Boddington & Brown, of Kansas City, *amicus curiae* for Skoog and Latimer, P.A., Richard O. Skoog, and R. Michael Latimer.

Before SIX, P.J., BRISCOE and BRAZIL, JJ.

SIX, J.: Appellants Steve and Ann Sutterby appeal the district court's grant of summary judgment against them in their action for abuse of process and wrongful execution against appellees, The Wellsville Bank (Bank) and its president, Richard Moherman. The issues are whether the trial court erred (1) in concluding that judgment entered against the Sutterbys was voidable only, (2) in granting the Bank and Moherman summary judgment on the Sutterbys' abuse of process claim, (3) in granting the Bank and Moherman summary judgment on the Sutterbys' wrongful execution claim, and (4) in failing to permit the Sutterbys to join the Bank's attorneys in this action. We find no error and affirm.

On February 5, 1985, The Wellsville Bank filed an action against the Sutterbys to foreclose its security interest in equipment and guns. The Sutterbys had given the Bank a security interest in this property to secure payment of a promissory note in the amount of $85,946.62.

After the Sutterbys were served with the summons and petition for foreclosure, they met with Moherman to work out an agreement to avoid foreclosure of the security interest. The Sutterbys and the Bank entered into a new note and security agreement on April 24, 1985. In consideration for the new note, the Bank agreed not to enforce the original note and the Sutterbys agreed to reduce the loan balance to $70,000 on or before July 1, 1985.

By late June 1985, the Sutterbys had paid approximately $3,500 towards the amount they owed under the April 24 agreement. On June 27, 1985, the Bank obtained a default judgment against the Sutterbys on the original note and security agreement. The Sutterbys did not make any payments to the Bank after July 13, 1985. They were in default on the new note as of July 1, 1985. In September 1985, the Bank filed a special execution directing the sheriffs of Douglas, Johnson, and Franklin Counties to seize the property which secured the original note.

The Sutterbys, on September 23, 1985, filed a motion to set aside the default judgment. On November 5, 1985, the trial court granted the motion, concluding that the April 24, 1985, agreement was a novation and that the original note was no longer enforceable. In addition, the court granted the Bank twenty days to file an amended petition on the new note.

Steve Sutterby, on November 7, 1985, picked up the guns and ammunition seized by the Douglas County Sheriff. On November 8, 1985, the Douglas County Clerk received a copy of a letter from counsel for the Bank to counsel for the Sutterbys. The letter stated that on November 6, 1985, the Bank was exercising its right of self-help to repossess all secured property based upon the Sutterbys' default on the new note and security agreement.

The Bank, on November 12, 1985, filed an amended petition for foreclosure under the new note. Before filing an answer, the Sutterbys filed a motion to join Moherman and the Bank's attorneys as third-party defendants. The court permitted the Sutterbys to join Moherman. However, the court denied the request to join the Bank's counsel, reasoning that the Sutterbys failed to furnish the court with any legal authority justifying the action against the attorneys. The Sutterbys filed: (1) an answer to the Bank's amended petition, (2) a counterclaim against the Bank, and (3) a cross-claim against Moherman for abuse of process and wrongful execution.

The action was bifurcated for trial. On August 15, 1986, the Bank's foreclosure action came on for trial. The trial court ordered that the Bank's security interest be foreclosed and awarded the Bank judgment in the amount of $95,723.04.

The Bank and Moherman, on August 25, 1986, moved for summary judgment on the Sutterbys' counterclaim. The trial court granted the motion, concluding that the June 27, 1985, judgment on the original note was a voidable judgment and remained in effect until set aside. The trial court reasoned that once the judgment was set aside, the Bank remained in legal possession of the equipment because by that time the Sutterbys were in default on the new note and the Bank could legally exercise a right of self-help to repossess the property. The trial court concluded that the Bank never wrongfully possessed the collateral.

## 1. VOID—VOIDABLE JUDGMENT

The Sutterbys contend that they "appeared" in the Bank's action on the original note and that K.S.A. 60-255(a) entitled them to notice of the Bank's application for default judgment three days prior to the hearing. Because they did not receive this notice, they contend that the default judgment was void, rather than voidable; consequently, the subsequent execution upon the alleged void judgment constitutes an abuse of process. See *Little v. Sowers*, 167 Kan. 72, 204 P.2d 605 (1949).

The Sutterbys concede they did not present this issue to the trial court. They assert, however, that if the new issue is determinative of the case and involves only a question of law arising on proved facts it may be addressed by this court for the first time. See *Johnson v. Kansas Neurological Institute*, 240 Kan. 123, 126, 727 P.2d 912 (1986).

K.S.A. 60-255(a) provides that "[i]f the party against whom judgment by default is sought *has appeared in the action,* he or she . . . shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application." (Emphasis added.)

Assuming for discussion purposes, and without so holding, that the execution of the new note constituted an "appearance" within the meaning of K.S.A. 60-255(a), the Bank's failure to give the required three days' prior notice of the hearing on the Bank's application for default judgment does not render the default judgment void. Failure to give the three days' notice justifies the setting aside of the default judgment. *Cf. Hood v. Haynes*, 7 Kan. App. 2d 591, 598, 644 P.2d 1371 (1982); 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2687 (1983). However, the default judgment entered without such notice is not void. *Winfield Associates, Inc. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir. 1970); 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2687; accord, *Universal Modular Structures, Inc. v. Forrest*, 11 Kan. App. 2d 298, 302, 720 P.2d 1121 (1986). The trial court did not err in concluding that the default judgment was voidable.

## 2. ABUSE OF PROCESS

The Sutterbys argue that: (1) regardless of whether the default

judgment was void or voidable, the issuance of the writ of execution on the judgment constituted an abuse of process, and (2) the trial court erred in entering summary judgment in favor of the Bank and Moherman.

The Sutterbys do not contend there are disputed questions of fact. The question we must address is whether the uncontroverted facts are legally sufficient to support the granting of summary judgment in favor of the Bank and Moherman on the Sutterbys' abuse of process claim. See *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 531, 739 P.2d 444 (1987).

To establish their claim of abuse of process, the Sutterbys had to prove: (1) that the Bank and/or Moherman made an illegal, improper, or perverted use of civil or criminal process (that is, a use neither warranted nor authorized by the process); (2) that the Bank and/or Moherman had an ulterior motive or purpose in exercising the illegal, improper, or perverted use of process; and (3) that the Sutterbys were damaged by the abuse of process. *Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 646-47, 621 P.2d 411 (1980); *Welch v. Shepherd*, 169 Kan. 363, 366, 219 P.2d 444 (1950); see Restatement 2d of Torts § 682 (1977).

The undisputed facts establish that the Bank and Moherman had no other "motive" than to execute on a judgment, valid on it face. The use of a writ of execution to satisfy a judgment valid on its face is proper. See *Lacy v. Laurentide Finance Corp.*, 28 Cal. App. 3d 251, 255-56, 104 Cal. Rptr. 547 (1972); *Cartwright v. Wexler, Wexler & Heller, Ltd*, 53 Ill. App. 3d 983, 986, 369 N.E.2d 185 (1977). The trial court did not err in granting summary judgment to the Bank and Moherman on Sutterbys' abuse of process claim.

### 3. WRONGFUL EXECUTION

The Sutterbys reason that once the default judgment was set aside, the Bank became a trespasser *ab initio*, rendering the execution on the judgment wrongful.

The general rule in Kansas is that one who causes a writ of execution to issue upon a judgment which is later vacated is liable for the damages caused by the wrongful execution. *Little v. Sowers*, 167 Kan. at 76-77.

The Sutterbys-Bank relationship is complicated by the fact that, as of July 1, 1985, some two-and-a-half months *before* the

writ of execution was issued, the Sutterbys defaulted upon the new note. In the security agreement, the parties agreed that: (1) until default, the Sutterbys would have possession of the collateral, and (2) upon default, the Bank would have the right to immediate possession of the property and to the remedies of a secured creditor under the Kansas Uniform Commercial Code. The issue is whether the Bank's right to possess the collateral under the terms of the security agreement shields it from liability for wrongful execution upon the original note. We hold that it does.

In *Wilk Enterprises v. J.I.B. Realty*, 72 Misc. 2d 507, 339 N.Y.S.2d 75 (1972), the assignee of a security interest in the debtor's equipment brought suit against the debtor's landlord for recovery of property. Debtor was in default and the assignee repossessed the equipment. Before all of the equipment could be removed, the landlord put a lock on the door and prevented the assignee from removing any more items. The assignee obtained an ex parte order directing a marshal to seize the remaining equipment from the landlord. The assignee brought an action for recovery of certain items that the marshal was unable to seize, and the landlord counterclaimed for the value of the items removed. As part of its argument, the landlord contended that the ex parte order was improper because it was granted without notice, therefore subjecting the assignee to liability for wrongful execution. The court disagreed, concluding as follows:

"Plaintiff, as the assignee of the security interest, had the right on default to take possession of the chattels. (Uniform Commercial Code Section 9-503.) . . . [W]hether or not the order was properly issued would not affect plaintiff's right to possession of the chattels since it had such right as a matter of substantive law pursuant to section 9-503 of the Uniform Commercial Code and as one who had become owner of the chattels. See *Mendelson v. Irving* (155 App. Div. 114), pointing out that if one had the right to take possession without legal process, one could not be deprived of that right by using legal process which turned out to be void." *Wilk Enterprises*, 72 Misc. 2d at 511-12.

Similar reasoning was applied in *Massey-Ferguson Credit Corp. v. Peterson*, 102 Idaho 111, 626 P.2d 767 (1980). In *Massey-Ferguson*, a secured creditor repossessed its collateral under authority granted by the state's prejudgment claim and delivery statute. The statute was held to be unconstitutional. The debtor sued the creditor for utilizing the unconstitutional statute to

repossess the debtor's property, alleging the execution constituted a deprivation of constitutional rights. The Idaho Supreme Court concluded that the debtor could, at best, recover nominal damages, reasoning that if the creditor would have exercised self-help repossession under UCC § 9-503, the debtor would have had no actionable claim at all. The court disagreed with the debtor's contention that its default under the security agreement was immaterial to its cause of action for deprivation of constitutional rights. *Massey-Ferguson Credit Corp.*, 102 Idaho at 115-16.

In this case, the Sutterbys were in default on the new note on July 1, 1985. Under the terms of the security agreement, the Bank was entitled to possession of the collateral. Further, the Sutterbys' default triggered the following provision of the Kansas version of the Uniform Commercial Code:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." K.S.A. 84-9-503.

We note that the rights and remedies of a secured creditor under Article 9 of the UCC are cumulative. K.S.A. 84-9-501.

When the writ of execution was issued in September of 1985, the Bank was entitled to possession of the property. The execution on the property could not have been wrongful if the Bank was entitled to possession of the property. *Wilk Enterprises*, 72 Misc. 2d at 511-12; *Massey-Ferguson Credit Corp.*, 102 Idaho at 115-16; see *Watkins v. Layton*, 182 Kan. 702, 704, 324 P.2d 130 (1958). In addition, the Sutterbys suffered no damage as a result of the execution. They could not recover damages for the loss of property which, under the terms of the security agreement, they had no right to possess. The trial court did not err in granting the Bank and Moherman summary judgment on the Sutterbys' wrongful execution claim.

## 4. JOINDER OF ATTORNEYS

The Sutterbys contend the trial court erred in failing to permit them to join the Bank's law firm and attorneys in this action.

On December 2, 1985, the Sutterbys moved to add Richard Moherman as a third-party defendant in their abuse of process and wrongful execution action against the Bank, case No. CV

85-89. The Sutterbys also moved to add the Bank's attorneys, Richard O. Skoog and R. Michael Latimer, and their law firm, Skoog and Latimer, P.A., as third-party defendants. On August 18, 1986, the trial court permitted the Sutterbys to join Moherman, but refused to allow them to join either the firm or Skoog and Latimer individually.

On May 6, 1986, the Sutterbys filed a *new* lawsuit (CV 86-346) against Skoog, Latimer, and the firm alleging that the attorneys were liable for abuse of process and wrongful execution for their participation in the Wellsville Bank's foreclosure action. The trial court dismissed this action with prejudice by journal entry filed September 19, 1986.

On appeal, the Sutterbys claim the trial court erred in failing to permit them to join Skoog and Latimer in the action against the Bank. Skoog and Latimer, who have filed an *amicus curiae* brief, argue that any action against them for wrongful execution and abuse of process is barred by principles of res judicata which render the joinder issue moot.

In *In re Estate of Reed*, 236 Kan. 514, 519, 693 P.2d 1156 (1985), the Supreme Court stated the requirements for establishing res judicata:

"An issue is res judicata when there is a concurrence of four conditions: (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made. [Citations omitted]."

The doctrine of res judicata prevents a second assertion of the same claim or cause of action. *Wirt v. Esrey*, 233 Kan. 300, 308, 662 P.2d 1238 (1983).

It is undisputed that the same parties were involved in case No. CV 85-89 and in case No. CV 86-346 and that the same claims or causes of action were involved.

In addition, without an indication to the contrary, the dismissal of the Sutterbys' action with prejudice was on the merits. K.S.A. 60-241(b); *Wirt v. Esrey*, 233 Kan. at 309-10.

The Sutterbys' claim against Skoog and Latimer in case No. CV 85-89 (this appeal) would be the same claim that was adjudicated on the merits in case No. CV 86-346 (the second lawsuit). Of course, at the time the trial court denied the joinder motion, the second case had not been filed. The denial precipitated the

second lawsuit which was disposed of on the merits. If Skoog and Latimer were to be joined now in this case (case No. 85-89), the Sutterbys' action against them would be barred by res judicata. The trial court did not err in refusing to allow the Sutterbys to join Skoog and Latimer as third-party defendants.

Affirmed.