No. 58,318

A. M. Stauth, Randy M. Stauth, J. Wes Berghouse, Dee Jacquart, and Rollie Jacquart, *Appellees*, v. William F. Brown, Jr., and Amy E. Brown, husband and wife, and William C. Eckles and Cheryl A. Eckles, husband and wife, *Appellants*.

(734 P.2d 1063)

2

Opinion filed March 27, 1987.

*Max Eugene Estes,* of Williams, Larson, Strobel, Estes & Malone, P.A., of Dodge City, argued the cause and *Terry J. Malone* and *Ronald C. Mason,* of the same firm, were with him on the brief for appellants.

*David H. Snapp,* of Minner & Waite, of Dodge City, argued the cause and *Harry A. Waite,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is a breach of contract/mortgage foreclosure case. The district court granted judgment in favor of the plaintiffs and the defendants appealed. The Court of Appeals dismissed the appeal as interlocutory and we granted review. The facts are:

On January 3, 1977, the appellees ("Sellers") contracted to sell certain real estate located in Ford County to the appellants ("Buyers") for $60,600. The property subject to the contract was identified by a preliminary plat and was described in the contract as "[l]ots 1, 2 and 3, Block 11; Rollie Dee Hills Addition, except all minerals will be reserved." The Buyers paid $5,000 down and $10,000 upon approval of title with the balance of $45,600 to be paid in annual installments of $3,000 and payments

to continue "until streets and utilities are available and installed to the lots or until the total amount is paid," some fifteen years hence. The contract further provided:

"The total unpaid balance shall be payable when streets and utilities are available and installed to the lots; provided however, in no event shall the entire balance be payable before December 1, 1978. *The streets and utilities shall be installed prior to the expiration of this contract.*" (The entire contract is set out later in our discussion of the issues.)

The Buyers hired attorney Harry Waite to examine the abstracts covering the subject property. Mr. Waite's opinion, dated February 15, 1977, included the following statement:

"Although the plat showing the subdivision of a part of the quarter section into lots and blocks has not been recorded in the office of the Register of Deeds, such plat is fully prepared and is going through the process of approval by the city before it is filed in the office of the Register of Deeds. The fact such plat is not yet recorded is of no real significance at this time."

No final plat was ever approved or recorded in the register of deeds office.

The Buyers made annual payments until February 20, 1984, at which time they stated they wanted to pay off the contract and requested information from the Sellers as to (1) when the final plat would be recorded; (2) when the streets and utilities would be installed; and (3) when commercial zoning would be verified. In a letter dated March 7, 1984, the Sellers responded that the items mentioned by the Buyers "were all met" at the time the papers were placed in escrow. The Sellers further advised the Buyers that if they wished to pay the contract in full, they need only take the money to the bank and pick up the deed. The Buyers ceased making payments upon the contract after receiving the Sellers' response.

The Sellers brought the present action on November 29, 1984, seeking judgment for the unpaid indebtedness, plus interest, costs, and taxes. The Sellers further requested the court to foreclose the real estate contract as a first mortgage lien and enter an order directing a sheriff's sale of the property. The Buyers answered, raising numerous equitable defenses, and counterclaimed.

The district court ruled in favor of the Sellers on May 24, 1985,

ordering judgment in the amount of the unpaid contract balance ($27,600) plus interest. The court further held the Sellers were "entitled to a decree foreclosing the contract as a first and prior mortgage."

The Buyers filed a notice of appeal with the district court on June 19, 1985.

In an unpublished *per curiam* opinion dated May 29, 1986, the Court of Appeals dismissed this case for lack of jurisdiction. The court held that because the order of sale and order confirming sale were never filed, there was not a final judgment upon which an appeal could be based. The court further directed the trial court to make "explicit findings as to the legal description of the real estate to be foreclosed." We granted review.

The first issue presented for review is whether an order of judgment in a mortgage foreclosure action is a final judgment which may be appealed.

The Buyers argue that an order of judgment in a mortgage foreclosure action is a final judgment which may be appealed from because the rights of the parties have been settled and nothing remains to be done but to have the sale and pay out the proceeds.

In support of this argument, the Buyers cite *Ex Parte Norton,* 108 U.S. 237, 27 L. Ed. 709, 2 S. Ct. 490 (1883). There, the United States Supreme Court held that in foreclosure proceedings a decree is final for purposes of an appeal which settles every question in dispute between the parties and leaves nothing to be done but to complete the sale under the proceedings for foreclosure and hand over the surplus as the decree directs.

Although this court has not directly ruled upon the issue presented here, the case of *Miller v. Rath,* 173 Kan. 192, 244 P.2d 1213 (1952), is relevant. In *Miller,* this court held that a decision by the trial court finding the lien of a judgment creditor superior to the lien of the plaintiff was not a final judgment. The court reasoned there was no final judgment because "[t]here was no determination of amounts due any litigant, or of the priority of claims of any other defendant in the action." 173 Kan. at 194. This holding implies that a final judgment in a foreclosure action consists of a determination as to the amounts due litigants and

the priority of claims. These determinations were made and included in the journal entry of judgment in the present case. Judgment was entered against the Buyers in the amount of $27,600 plus interest. The unfinished task was that of collecting the judgment. The rights of the parties were determined.

The Court of Appeals determination that there was no final order in this case is in conflict with the decisions of courts of other jurisdictions and with the views expressed by various commentators.

For instance, in *Shuput v. Lauer*, 109 Wis. 2d 164, 325 N.W.2d 321 (1982), the Supreme Court of Wisconsin held that a judgment of foreclosure and sale is a final judgment appealable as of right which must be appealed within the time prescribed by statute. Thus, the court ruled that where the mortgagors failed to appeal from a judgment of foreclosure and sale and did not contest the later order of confirmation, the mortgagor could not challenge the judgment of foreclosure and sale in the appeal from the order confirming the foreclosure sale. The court noted at pages 173-74:

"Our holding in this case is also in accord with the views expressed by the commentators and with the decisions of courts in other jurisdictions. There is general agreement that the judgment of foreclosure and sale is a final decree; that the proceedings subsequent thereto relating to the sale are analogous to the execution of a judgment and simply enforce the parties' rights which have been adjudicated; that a party who wishes to contest the judgment of foreclosure and sale must appeal from that judgment; that the judgment of foreclosure and sale cannot be challenged on appeal from an order confirming the sale; and that on an appeal from an order confirming the sale an aggrieved person may challenge the regularity of the proceedings subsequent to the judgment of foreclosure and sale."

Further, in *MDG Supply v. Diversified Inv.*, 51 Hawaii 375, 463 P.2d 525 (1969), *cert. denied* 400 U.S. 868 (1970), the Supreme Court of Hawaii held that a judgment of foreclosure of mortgage or other lien is final although it contains a direction to make a report of sale and to bring the proceeds into court for an order regarding their disposition. The court reasoned that such a judgment finally determines the merits of the controversy, and subsequent proceedings are simply incident to its enforcement. 51 Hawaii at 380.

At 59 C.J.S., Mortgages § 685, p. 1242, it is stated:

"A judgment or decree of foreclosure, directing a sale of the mortgaged property, is generally regarded as a final judgment or decree, and its finality is not affected by the failure of the judgment to dispose of other asserted liens. It is final in so far as it determines the rights of the parties, the amounts to be paid, and as to the award of a personal judgment and the granting of a lien; and, when the judgment or decree grants a time to redeem, the day of the expiration of such time is the day of final judgment. It is executory and interlocutory as to the order directing the manner of sale and the proper distribution of the proceeds thereof."

We hold the district court made a final determination with respect to the rights of the parties, the amounts to be paid, and the priority of claims. Accordingly, the Court of Appeals erred in dismissing this case for lack of jurisdiction.

We now turn to the merits of the case. The Buyers seek rescission of the real estate contract on the theory of failure of consideration and breach. They contend the Sellers were required to record a formal plat on the property described in the contract and that the Sellers agreed to install streets and utilities prior to expiration of the contract, none of which has been done as agreed. They also contend the Sellers' actions in orally promising to comply with the contract, then refusing to do so, amount to fraud. They argue the contract is ambiguous and thus they are entitled to introduce parol evidence to show the oral representations of the Sellers.

Let us now examine the contract which is the subject of this litigation. It provides in pertinent part:

"First Parties agree to sell and convey to Second Parties, and Second Parties agree to purchase and pay for the following described real estate in Ford County, Kansas:

'Lots 1, 2 and 3, Block 11, Rollie Dee Hills Addition, except all minerals will be reserved,'

upon the following terms and conditions.

"PRICE. A total price of $60,600.00.

"TIME AND MANNER OF PAYMENT. The price shall be paid as follows:

"A) $5,000.00 down to be paid to the escrow agent at the time of the execution of this contract.

"B) $10,000.00 upon approval of title, at which time the $5,000.00 down payment shall also be paid to First Parties. The parties contemplate approval of title by February 15, 1977.

"C) The then balance of $45,600.00 to be paid in annual principal payments of $3,000.00 each, to be made February 15, each year, with the first payment on February 15, 1978.

"Unpaid balances shall bear interest at the rate of 9% per annum, commencing February 15, 1977. Accrued interest will be paid each year at the time payment is made on principal.

"The annual payments of principal and interest shall continue until streets and utilities are available and installed to the lots or until the total price is paid.

"The total unpaid balance shall be payable when streets and utilities are available and installed to the lots; provided however, in no event shall the entire balance be payable before December 1, 1978. The streets and utilities shall be installed prior to the expiration of this contract.

"After December 1, 1978, Second Parties may prepay all or any part of the unpaid balance without penalty.

"For the purpose of this contract, the word 'utilities' means gas, water, electricity, sewer and telephone.

. . . .

"Conveyance shall be by general warranty deed subject to restrictions and excepting all mineral rights. It is agreed that commercial use of the property shall not be prohibited." ·

The Buyers first allege the subject matter of the contract is not "definite enough" to make the contract enforceable. Their argument pertains to the first paragraph of the real estate contract, which describes the subject property by reference to the unrecorded preliminary plat.

In support of their contention, the Buyers rely on *Luthi v. Evans*, 223 Kan. 622, 629, 576 P.2d 1064 (1978). There, we held that in recording instruments of conveyance, a description of the property conveyed is considered sufficient if it identifies the property or affords the means of identification within the instrument itself or by specific reference to other instruments recorded in the office of the register of deeds.

The Buyers argue that since the plat is unrecorded, nothing in the contract or deed affords a means of identifying the subject property. Further, the Buyers point out that no document in the register of deeds' office would identify the property. They argue that only if the Sellers had recorded the plat could the subject matter be identified.

First, we note that our holding in *Luthi* is inapplicable here because the issue in *Luthi* concerned the type of description necessary in a recorded instrument to impart notice to a subsequent purchaser or mortgagee. Here, the issue is simply whether a contract and deed containing a description by reference to an unrecorded plat is valid. The general rule with regard to this issue is stated at 23 Am. Jur. 2d, Deeds § 62, p. 116:

"It is not necessary to the validity of a description in a deed by reference to a map or plat that the map or plat referred to be registered. Nor is the validity of the description destroyed because the recorded map of reference should not have been accepted by the recorder."

K.S.A. 12-405 states:

"If any person sell or offer for sale any lot within any city, town or addition before the map or plat thereof be made out, acknowledged, filed and recorded as aforesaid, such person shall forfeit a sum not exceeding three hundred dollars for every lot which he or she shall sell or offer to sell."

A predecessor to this statute was interpreted in *Bemis v. Becker and others,* 1 Kan. 226, 249 (1862). There, we held that a sale of city lots before the plat had been recorded was not void, and title in the lots sold passed to the vendee. See also *Mead v. United Brethren,* 43 Kan. 178, 23 Pac. 103 (1890), and Annot., 77 A.L.R.3d 1058.

Here, the preliminary plat was prepared by a licensed engineer, furnished to the Buyers, and filed and approved by the Planning Commission. Under the circumstances of this case, we hold the description of the subject property by reference to the unrecorded plat did not invalidate the contract nor make it ambiguous.

The Buyers next assert error in the trial court's finding that the record contains no evidence of fraud or undue influence.

The Buyers argue they relied to their detriment upon fraudulent statements allegedly made by the Sellers concerning the recording of the final plat. As evidence of fraud, the Buyers point to the title opinion which stated the plat was fully prepared, was in the process of approval by the City, and would be recorded with the register of deeds. They also rely on statements allegedly made yearly by the Sellers that the plat would be recorded and "the project completed" within the following year. The Buyers conclude that these statements were known to be untrue by the Sellers and were made with the intent to deceive.

When reviewing the trial court's findings with respect to fraud, we must keep in mind that the existence of fraud is ordinarily a question of fact and this court's review is limited to determining whether the trial court's findings are supported by substantial competent evidence. *Bank of Whitewater v. Decker Invest-*

*ments, Inc.,* 238 Kan. 308, 710 P.2d 1258 (1985). Further, fraud is never presumed and must be proved by clear and convincing evidence. *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545 (1980).

The Buyers have failed to prove fraud by clear and convincing evidence and the trial court's ruling is correct.

The next issue is whether the trial court erred in finding the contract was clear and unambiguous. If the contract is unambiguous there is no basis for considering extrinsic evidence offered by the Buyers regarding conversations and agreements which were not part of the written contract.

Under the parol evidence rule, if a written contract is ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are relevant to clarify intent and the purpose of the contract in that regard, but *not* for the purpose of varying and nullifying its clear and positive provisions. *Cline v. Angle,* 216 Kan. 328, 532 P.2d 1093 (1975). Stated another way, the parol evidence rule excludes from evidence any oral testimony which would tend to add to, subtract from, or alter the terms of a clear and unambiguous written contract. *Temmen v. Kent-Brown Chevrolet Co.,* 217 Kan. 223, Syl. ¶ 3, 535 P.2d 873 (1975); *McBride Electric, Inc. v. Putt's Tuff, Inc.,* 9 Kan. App. 2d 548, 555, 685 P.2d 316 (1984). Further, the language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense that the contract may be understood to reach two or more possible meanings. *Duffin v. Patrick,* 212 Kan. 772, Syl. ¶ 4, 512 P.2d 442 (1973).

When these general rules are applied to the contract in question, the contract is clear and unambiguous, except for the provision hereinafter set out. The Sellers clearly are obligated to install the streets and utilities to the property. The contract clearly provides the Buyers are to make annual payments of $3,000 per year plus interest on the contract "until streets and utilities are available and installed . . . or until the total price is paid." The Buyers have a complete prepayment privilege after January 1, 1978. Further, the contract unambiguously states that

once the streets and utilities are available and installed, the total unpaid balance becomes due. However, the contract also provides, "The streets and utilities shall be installed prior to the expiration of this contract." This can be interpreted to mean the Buyers, by exercising their prepayment privilege, can accelerate the time the Sellers have in which to install streets and utilities, or it can mean that the Sellers have the full installment payment period of fifteen years to discharge their obligation to install streets and utilities.

Thus, we hold the contract is ambiguous only as to the time when the Sellers must install the streets and utilities. Therefore, we conclude this case should be remanded to the trial court and the Buyers permitted to introduce parol evidence for determination of when the Sellers are obligated to install the streets and utilities on the subject property.

We further note that while the contract does not require the Sellers to record the plat, in order to install streets and utilities, the Sellers will have to obtain the City government's approval and record a final plat. Thus, a provision requiring the recording of the final plat need not be explicitly set out in the contract. It is implicitly included therein.

The Buyers next contend their action in halting payment on the contract was justified because the Sellers committed an anticipatory breach of the contract. The Buyers argue this breach occurred when the Sellers responded to the Buyers' offer to pay the contract in full by stating that they (Sellers) had no further obligations under the contract and the Buyers need only pay the balance remaining on the contract to receive the deed.

We have held that where it is clear one party to a contract is going to be unable to perform, the other party need not wait for the date when performance is due to treat the contract at an end and pursue his remedies. *Whiteley v. O'Dell*, 219 Kan. 314, 317, 548 P.2d 798 (1976).

The theory of anticipatory breach of contract is further discussed at 17 Am. Jur. 2d, Contracts § 449, pp. 912-13:

"Nearly all the courts considering the question have reached the conclusion that a renunciation or repudiation of a contract before the time for performance, which amounts to a refusal to perform it at any time, gives the adverse party the

option to treat the entire contract as broken and to sue immediately for damages as for a total breach. . . . If the injured party does not wish to bring such an immediate suit for damages, he may elect between two other alternatives—that is, (1) to treat the contract as still binding and wait until the time arrives for its performance by the promisor, and at such time to bring an action on the contract, or (2) to rescind the contract and sue for money paid or the value of services or property furnished."

In the present case, the Buyers did not sue immediately for damages or rescind the contract and sue for money paid. Nor did they treat the contract as still binding and wait until the time arrived for performance before bringing an action. Instead, when the Sellers notified the Buyers that they (Sellers) had fulfilled their obligations under the agreement, the Buyers simply ceased making payments upon the contract.

Thus, we conclude the Buyers failed to make the election necessary to treat the renunciation as a breach. However, the Buyers were lured by the Sellers' anticipatory breach into halting their installment payments. The Sellers are not entitled to profit from their own wrongdoing. They are required to come into a court of equity with clean hands. This they did not do.

We are aware that the agriculture and energy recession has caused a dramatic decline in the value of real estate in Ford County. This decline in value is undoubtedly a causation factor in this dispute. However, the recession does not change the terms of the contract. The Sellers are entitled to the benefit of their bargain and the Buyers are entitled to receive the commercial property they contracted for. The remedy at law is inadequate. Since both the Buyers and the Sellers seek equitable relief, we deem this an appropriate case to fashion an equitable remedy.

It is stated at 27 Am. Jur. 2d, Equity § 70, p. 593:

"While equity does not make contracts for parties, it enforces contracts which parties make for themselves. Since there is no adequate remedy by an action at law in such respect, a court of equity, in the furtherance of justice, may compel a party to a contract to do that which ought to be done and which was contemplated at the time the agreement was entered into. A court of equity may decree that a party perform obligations of a contract within a fixed time upon pain of forfeiture. The jurisdiction of equity to grant specific performance of contracts, or to reform or cancel them in a proper case, is well settled."

If the trial court, upon remand, determines the Sellers agreed to install the streets and utilities and record the plat upon prepayment of the full purchase price, the Buyers shall be given a reasonable time to pay into court the balance owed, including interest and taxes, and the Sellers given a reasonable time to record the plat and install the streets and utilities. If the Buyers do not comply, the Sellers shall have foreclosure. If the Buyers comply and the Sellers refuse, the Buyers shall have rescission with full restitution.

On the other hand, if the court finds the Sellers have the full deferred payment period to comply with their unfullfilled obligations under the contract, the court shall then give the Buyers a reasonable time to bring their payments under the contract current and the annual installments ·shall continue until the purchase price is paid. Since the cost of installing the streets and utilities to the property according to City specifications could cost more than the balance owed on the contact, the balance owed on the contract shall be paid into the court, or its designee, and there accumulated until the Sellers have fully complied with the terms of the contract. If the Buyers do not bring the contract current within a reasonable time, the Sellers shall have foreclosure. If the Buyers comply with the court's order and the Sellers do not install the streets and utilities and file a plat within the deferred payment period, the Buyers shall have rescission with full restitution.

The judgments of the Court of Appeals and the district court are reversed and this case is remanded to the district court for further proceedings consistent with this opinion.