No. 66,691

BANK IV WICHITA, NATIONAL ASSOCIATION, *Appellee,* v. MARY PLEIN, *et al., Defendants,* and WILLIAM JOSEPH PLEIN, *Appellant.*

(830 P.2d 29)

Opinion
filed April 10, 1992.

*William A. Vickery*, of McMaster & McMaster, of Wichita, argued the cause and was on the briefs for appellant.

*John B. Barrett*, of Barrett & Barrett, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Six, J.: This case involves a divorce judgment lien and the effect of a mortgage foreclosure action on the lien. We address three issues in resolving the dispute: (1) whether a deferred lien on real estate awarded in a divorce action is a judgment subject to the K.S.A. 1991 Supp. 60-2403(a) five-year dormancy statute; (2) if so, whether the dormancy statute was tolled under the facts of the case at bar; and (3) whether there has been acquiescence in the trial court's judgment which effected a waiver of the appellant's right to appeal.

Bank IV Wichita, National Association (Bank IV) brought this action to foreclose on a mortgage given by Mary Plein on real property which she was awarded in a 1978 divorce from William Joseph Plein. Both Mary and William are defendants.

The divorce decree awarded Mary real property subject to a deferred lien awarded to William in the amount of $10,000, bearing interest at the rate of 8% per annum, beginning two years after June 9, 1978. The trial court ruled, in the case at bar, that William's lien was unenforceable and that he was not entitled to share in the distribution of proceeds received from the sheriff's sale of the subject real property. William appeals.

Our jurisdiction is based on a transfer from the Court of Appeals under K.S.A. 20-3018(c).

We rule that the trial court was in error. We reverse and remand with instructions to enter judgment for William.

## Facts

The case was decided by the trial court based on stipulated facts. The pertinent portions of the stipulation are:

"3. Paragraph 5 of the Journal Entry and Decree of Divorce filed in Sedgwick County Case No. 77-D-3294 provides as follows:
"[Mary] shall be awarded the residential real property located at 5000 South Kansas, Wichita, Kansas, described as follows:
[Legal description of the real property.]

*"The above-described property* which shall be awarded to [Mary], subject to the indebtedness thereof, including the note at the Union National Bank, Wichita, Kansas, *shall also be subject to a deferred lien which is hereby awarded to [William] in the amount of $10,000.00.* Said lien shall bear no interest for two years from June 9, 1978, but after that time will bear interest at the rate of eight percent (8%) per annum simple interest and not compounded. Said lien is subordinate to the note held by the Union National Bank of Wichita, Kansas, and any refinancing of said note which may be effected by the plaintiff. *Said lien and the deferred interest shall be due and payable in full to the defendant from the plaintiff* upon the voluntary sale of the property, the death or remarriage of the plaintiff, or continuous cohabitation by the plaintiff with a male person to whom she is not related by blood or marriage, and *any time she does not occupy the property as a residence for herself and one or more of the minor children of the parties.* Plaintiff shall hold the defendant harmless from any indebtedness on or related to the above property. [Emphasis added.]

. . . .

"4. The Defendant, Mary Plein, has made no payments to the Defendant, William Joseph Plein, toward the satisfaction of said 'deferred lien.'

. . . .

"6. Jeffrey L. Plein is the youngest child of Mary Helen Plein and William Joseph Plein. Jeffrey L. Plein's eighteenth birthday was November 20, 1985. . . .

"7. William Joseph Plein did not issue any execution on the judgment granted under the Journal Entry and Decree of Divorce described above until January 24, 1991. (See, official court file for Case No. 77-D-3294 which the parties respectfully request the Court to take judicial notice thereof.)

. . . .

"10. The Defendant, Mary H. Plein, a/k/a Mary Helen Plein, has defaulted on the terms of said mortgage and the underlying note. On or about the 21st day of July 1989, the Plaintiff, Bank IV Wichita, N.A. formerly Bank of Mid America, filed a Petition to foreclose said mortgage. On September 7, 1989, the Defendant, William Joseph Plein, timely filed a responsive pleading entitled 'Pleading,' asserting that 'the Court awarded a lien to William Joseph Plein' set forth in said [divorce action] and that said lien is superior to the mortgage of the Plaintiff.

. . .

"11. Without notice to Defendant, William Joseph Plein, Ben Foster, then counsel for Plaintiff, Bank IV, filed a Journal Entry of Judgment on December 27, 1989, which did not set forth the lien of William Joseph Plein.

. . . .

"14. On or about July 31, 1990, it was agreed by all counsel that the prior Journal Entries in this case should be set aside. . . .

"15. Defendant William Joseph Plein filed an Amended Answer and Petition for Foreclosure on February 1, 1991. This pleading amended the Answer filed by Defendant William Joseph Plein on September 7, 1989.

. . . .

"17. In the event William Joseph Plein's judgment and lien awarded in [the divorce action] are determined to be valid and enforceable, the parties stipulate the amount of William Joseph Plein's lien is in the principal amount of $10,000, plus accrued interest through March 27, 1991, in the amount of $8,637.29, plus interest thereafter at eight percent (8%) per annum, or $2.19 per day."

The trial court, in foreclosing Bank IV's mortgage, found the mortgage to be senior and superior to all liens except William's. The remaining issues before the trial court were whether William's lien had become dormant and, if not, the lien's priority. Claude and Nancy Anderson, who are not named as defendants in the case at bar, had a first mortgage on the real estate and were granted first priority status.

The trial court reasoned that William's lien is a judgment lien which became dormant under K.S.A. 1991 Supp. 60-2403(a). According to Bank IV, the 1989 default judgment journal entry, which was set aside, did not toll the running of the dormancy statute. Even if William's amended answer relates back to his original answer, the amended answer is not an execution, garnishment, or proceeding in aid of execution (the requirements of K.S.A. 1991 Supp. 60-2403[a] to keep the judgment alive). The trial court ruled William's lien is presently unenforceable and subordinate to the mortgage lien of Bank IV and all other judgment lien creditors who are not in default.

Following the trial court's ruling, William filed a motion to revive judgment and for immediate issuance of execution in the original divorce action. The motion was heard and granted. A general execution was issued to the sheriff and returned with the notation, "No Service—No Address."

After William and Bank IV had filed their respective briefs in the Court of Appeals, Bank IV filed a motion to dismiss the appeal. Bank IV asserted that William has acquiesced in the trial court's judgment by reviving the judgment in the original divorce action and obtaining an order of execution. The Court of Appeals denied Bank IV's motion to dismiss the appeal, stating the ar-

gument asserted will be considered when the case is decided on the merits.

Mary has not filed a brief in the instant action.

## Standard of Review

This case was decided below on the basis of stipulated facts; therefore, we may exercise de novo review. *Kneller v. Federal Land Bank of Wichita,* 247 Kan. 399, 400, 799 P.2d 485 (1990).

## The Divorce Lien

William argues that the lien awarded to him in the divorce action is not a judgment lien subject to dormancy under K.S.A. 1991 Supp. 60-2403. He asserts that he was awarded a specific lien against a specific piece of property, *i.e.,* an interest in the real estate, and was not awarded a money judgment. William reasons that because his lien did not arise as a matter of law by virtue of a generic money judgment under K.S.A. 1991 Supp. 60-2202(a), the lien is not subject to dormancy under K.S.A. 1991 Supp. 60-2403.

Bank IV contends that the deferred lien granted to William is a judgment lien, arguing that a division of property in a divorce decree is a judgment. Bank IV reasons that because William did not issue an execution or garnishment within five years after his deferred lien became enforceable on November 20, 1985, (the Pleins' youngest child's 18th birthday) his judgment became dormant under K.S.A. 1991 Supp. 60-2403(a) and lost its priority.

K.S.A. 1991 Supp. 60-2403(a) provides in part:

"If a renewal affidavit is not filed or if execution, including any garnishment proceeding, income withholding proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of *any judgment in any court of record in this state,* . . . or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, *the judgment,* including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor." (Emphasis added.)

The fundamental rule of statutory construction is that the intent of the legislature governs. *NCAA v. Kansas Dept. of Revenue,* 245 Kan. 553, 557, 781 P.2d 726 (1989). When construing a

statute, a court should give words in common usage their natural and ordinary meaning. *In re Estate of Robinson,* 236 Kan. 431, 436, 690 P.2d 1383 (1984).

K.S.A. 1991 Supp. 60-2403(a) speaks of "any judgment" of any court of record in this state. The statute does not limit its application to a monetary judgment which becomes a lien on the judgment debtor's real estate under K.S.A. 1991 Supp. 60-2202(a). Therefore, the statute is broad enough to include a judgment awarding a specific lien on specific real estate as well as a monetary judgment which becomes a lien on real estate under K.S.A. 1991 Supp. 60-2202(a).

William relies on *In re Donahue,* 862 F.2d 259 (10th Cir. 1988). The issue of dormancy of the judgment awarded in the *Donahue* divorce decree was not involved. Therefore, *Donahue* provides no direct guidance relative to the issues presented here.

Bank IV relies on *Chapman v. Chapman,* 184 Kan. 319, 336 P.2d 407 (1959). *Chapman,* a divorce case, involved a money judgment which was ordered to be a lien on the property of the ex-wife. In the case at bar, William was awarded a lien on the subject real estate rather than a money judgment. Nevertheless, the division of property made by a trial court in a divorce is a judgment. Because K.S.A. 1991 Supp. 60-2403(a) speaks of "any judgment," the judgment in the underlying divorce action, awarding a lien to William, is subject to dormancy.

### Tolling the Statute—The Default Judgment

William argues that K.S.A. 1991 Supp. 60-2403(a) was tolled from November 17, 1989, when the default judgment was entered barring his interest in the real estate, until November 2, 1990, when the default judgment was set aside. He contends the five-year dormancy time period does not run during any period in which it is impossible to collect the judgment by legal process. According to William, the default judgment was a final judgment which extinguished his interest in the real estate. He had no interest in the real estate upon which to file an execution, and he had no other money judgment to pursue. Because the default judgment was merely voidable and not void, William contends that he could not collaterally attack the judgment by enforcing his lien in the divorce action. He asserts that he had to set aside

the default judgment prior to an execution or other action to enforce his rights.

Bank IV emphasizes that although the divorce decree described William's award as a "deferred lien," the judgment was for a specific amount of money, $10,000. Any property held by Mary would be subject to William's lien and, thus, subject to execution. Bank IV questions the actions taken by William following the second journal entry of foreclosure extinguishing his interest in the real estate. William revived the divorce judgment and caused execution to be issued. The actions demonstrate William's acquiescence in that he could have filed an execution in the divorce case while the default judgment was in effect.

By its plain terms, the divorce decree awarded William a lien on the property in the amount of $10,000. The divorce decree did not award him a monetary judgment in the amount of $10,000. The lien became enforceable on November 20, 1985, when Jeffrey, the Pleins' youngest child, turned 18 years old. Thus, the five-year dormancy period ran on November 20, 1990, unless the period was tolled.

William relies on *Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership*, 13 Kan. App. 2d 678, Syl. ¶ 4, 779 P.2d 442 (1989), which states: "The time within which a judgment must be enforced to prevent it from becoming dormant does not run during any period in which it is impossible to collect the judgment by legal process."

In 1990, the legislature amended 60-2403, adding the following provision: "(c) The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited. L. 1990, ch. 208 § 1. Thus, the holding in *Wichita Fed. Sav. & Loan Ass'n* has been codified.

On November 28, 1989, a journal entry reflecting the default judgment was filed in the case at bar, barring William from asserting his lien on the real estate. The default judgment effectively extinguished William's lien on the subject real estate.

A judgment of foreclosure is a final judgment for purposes of appeal if it determines the rights of the parties, the amounts to be paid, and the priority of the claims. *Stauth v. Brown*, 241 Kan. 1, Syl. ¶ 1, 734 P.2d 1063 (1987). The default judgment in

·the case at bar was a final judgment and was not appealed. A judgment which has been entered in a case and has become final cannot be collaterally attacked in a subsequent proceeding unless the judgment is void. *Riney v. Riney,* 205 Kan. 671, Syl. ¶ 4, 473 P.2d .77 (1970).

, The default judgment was entered without the notice required by K.S.A. 60-255. The failure to give a party who has appeared ·in the action three days' notice of the application for a default judgment does not render a judgment void; however, such judg- ·ment is voidable. *Wellsville Bank v. Sutterby,* 12 Kan. App. 2d 585, 588, 752 P.2d 700 (1988). Thus, the 1989 default judgment ·was final and valid until it was set aside on November 2, 1990. The default judgment could not be challenged collaterally.

Because the default judgment extinguished his lien, William had no judgment on which to issue an execution until the default ·judgment was set aside on Novembér 2, 1990. From November 28, 1989, until November 2, 1990, it was impossible for William to collect the judgment by legal process. Therefore, the five-year dormancy period did not run during this time.

: The parties stipulated that William issued execution on the judgment on January 24, 1991. The record does not contain an order of execution; however, according to the parties' stipulation, ·an ·execution was issued within the required time to keep the ·judgment alive. The trial court erred in finding the judgment granting William a lien on the subject real estate had become ·dormant. Our conclusion requires reversal and a remand.

### Acquiescence in the Trial Court's Judgment

Bank IV argues that William: (1) has waived his right to ap- ·pellate review by acquiescence in the trial court's judgment; and (2) has recognized the propriety of the trial court's judgment that his lien had become dormant by filing a motion to revive the judgment. Only a dormant judgment may be revived. In addition, according to Bank IV, William recognized that he had the ability to issue an execution while the 1989 default judgment was pend- ing by filing "General Executions" while the current journal entry in the case at bar that barred his lien was in place.

Counsel for William suggests that he has been in a "Catch-22" situation since becoming involved in the case in June of 1990.

The motion to revive, order to revive, and subsequent executions were filed in the collateral divorce case as a protective measure in light of the trial court's ruling. William contends that this court has recognized an exception to the rule regarding acquiescence in a judgment, where the acquiescence consists of protective acts. *McDaniel v. Jones,* 235 Kan. 93, 679 P.2d 682 (1984). William has neither received nor sought any benefit from the judgment. William emphasizes that his postjudgment actions were protective acts in the event the trial court is affirmed.

In *McDaniel,* we discussed the rules governing acquiescence in the judgment of the trial court sufficient to waive the right to appeal the judgment. "The gist of acquiescence sufficient to cut off a right to appeal is voluntary compliance with the judgment." 235 Kan. at 102. "[I]t is generally the rule that a waiver is not implied from measures taken by an appellant in defense of and to protect his rights or interest." 235 Kan. at 104. The "protective measure" exception applies in the instant action.

Following the trial court's judgment in the case at bar (the foreclosure action), William revived the divorce judgment and caused execution to be issued. These postjudgment acts are inconsistent with his positions on appeal that the judgment never became dormant and that the dormancy statute was tolled because he could not file an execution until the judgment extinguishing his lien was set aside. However, these acts fit within the protective measure exception applied in *McDaniel.* William revived his judgment as a protective measure in the event that this court should affirm the trial court. William's postjudgment actions were permissible protective measures which did not waive his right to appeal.

Having disposed of the issues necessary to resolve the instant appeal, we need not reach William's additional assertions of: (1) the relation back of William's answer under K.S.A. 60-215(c) and (2) the creation of an equitable mortgage to prevent unjust enrichment.

We reverse and remand with instructions to enter judgment for William. William's claim of priority is established ahead of Bank IV. The proceeds from the sale of the real estate contested by William and Bank IV are to be applied to the satisfaction of William's lien.

HOLMES, C.J., not participating.

■ PAUL E. MILLER, District Judge, assigned.