NOT DESIGNATED FOR PUBLICATION

No. 125,954

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EQUITY BANK, N.A.,
*Appellant*,

v.

TONY M. POURMEMAR, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Oral argument held March 6, 2024. Opinion filed June 14, 2024. Reversed and remanded.

*Justin T. Balbierz* and *Mark J. Lazzo*, of Mark J. Lazzo, P.A., of Wichita, for appellant Equity Bank.

*Karen L.E. Fritts* and *Brian J. Madden*, of Wagstaff & Cartmell LLP, of Kanas City, Missouri, for appellees James and Margaret Turner; *Carrie E. Josserand*, of Lathrop GPM LLP, of Kansas City, Missouri, for appellee Christopher Whitworth; and *Rachel B. Ommerman*, of Troutman Pepper Hamilton Sanders LLP, of Atlanta, Georgia, for appellee Nationstar Mortgage LLC.

Before WARNER, P.J., ATCHESON and BRUNS, JJ.

WARNER, J.: Equity Bank obtained a judgment for damages and foreclosure against Tony Pourmemar and his company, Meadowlark Plaza, in 2016. The bank later sought to enforce its judgment by foreclosing on two properties that Pourmemar had sold after the judgment without satisfying the bank's judgment lien. The district court quashed these efforts based on its belief that the 2016 judgment was not a final judgment that

1

attached to Pourmemar's property. According to the district court, there was a loose end in Equity Bank's case—an inactive receiver that had been appointed but never closed or dismissed—that prevented the 2016 judgment from being a collectable final judgment. Thus, the 2016 judgment had not attached to the properties the bank sought to foreclose.

Equity Bank has appealed the district court's ruling. After carefully reviewing the record and the parties' arguments, we agree with the bank that the 2016 judgment was a final judgment because it determined the rights of the parties, the amounts owed, and the priority of the claims of ownership. The open receivership, while technically pending, is not an unresolved claim for relief and does not alter the finality—or enforceability—of that judgment. We thus reverse the district court's ruling and remand for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

About 15 years ago, Equity Bank loaned over $3 million to Meadowlark Plaza, a limited liability company solely owned by Pourmemar, so that Meadowlark could buy and lease out two commercial properties—the Metcalf property and the Meadowlark property. As collateral for the loan, Meadowlark granted Equity Bank mortgages on the Metcalf and Meadowlark properties as well as an assignment of their rents. Pourmemar also personally guaranteed the loan.

*Bankruptcies, Judgment, and Foreclosure*

About two years after taking out this loan, Meadowlark filed for Chapter 11 bankruptcy. The bankruptcy reorganization plan restructured Meadowlark's mortgage payments to Equity Bank. A few months into the plan, Meadowlark missed a payment and failed to cure the default. That bankruptcy case ended on June 26, 2014.

After the bankruptcy case closed, Equity Bank sued Pourmemar, Meadowlark, and about 20 other defendants that the bank believed might have had an interest in the Metcalf and Meadowlark properties. The petition sought a ruling that Meadowlark had defaulted on the loan. It asked for a judgment foreclosing on the Metcalf and Meadowlark properties, as well as an assignment of the rents from those properties until foreclosure, and a judgment against Pourmemar enforcing his personal guaranty. The petition also included two separate "counts" requesting the court to appoint a receiver for the Metcalf and Meadowlark properties. These "counts" noted that Meadowlark had failed to deliver rents from those properties to the bank and alleged that "[a] receiver should be appointed to prevent the loss of the [rents and profits from the Metcalf and Meadowlark properties], which are collateral securing the Note now in default."

The district court granted Equity Bank's request for a receiver in December 2014, appointing Asset Management Group as the receiver for the Metcalf and Meadowlark properties. The court bestowed on the receiver broad powers to manage the two properties, including the right to take immediate possession and perform all of Pourmemar's and Meadowlark's rights and duties with respect to those properties. The court ordered Pourmemar and Meadowlark to cooperate with the receiver; hand over all accounts, records, and rental payments; and prohibited them from interfering with the receiver's rent collection.

A month later, Meadowlark again filed for Chapter 11 bankruptcy. Meadowlark's second reorganization plan significantly altered the ownership of the Metcalf and Meadowlark properties:

- The second reorganization plan required Meadowlark to sell the Metcalf property and distribute the sale proceeds to Equity Bank.

- The Meadowlark property consisted of three addresses—1223, 1301, and 1333 Meadowlark Lane. The second reorganization plan transferred the 1223 and 1301 properties to Equity Bank through deeds in lieu of foreclosure. While Meadowlark still held title to the 1333 property, Equity Bank retained its senior lien on that property. Pourmemar's guaranty was also left "in place and in full force and effect for the full amount due under the Equity Bank Note and Mortgage."

- The second reorganization plan required the parties to sign a stipulated journal entry of judgment, which Equity Bank could file with the Johnson County District Court should Meadowlark default on the plan.

Meadowlark again defaulted on its payments. In June 2016, the district court filed the parties' stipulated journal entry of judgment. In the journal entry, the court found Pourmemar personally liable to Equity Bank for over $2.82 million and found that Equity Bank was entitled to foreclosure and sale of the 1333 Meadowlark property. At Equity Bank's request, the court also entered a default judgment against all the remaining defendants in the case. The 1333 Meadowlark property was sold following the foreclosure.

*Equity Bank's Efforts to Collect the Judgment*

With its personal judgment against Pourmemar for over $2 million in hand, Equity Bank sought to collect the deficiency judgment. After obtaining a court order to sell another of Pourmemar's properties, Equity Bank filed a writ of execution against two residential properties that Pourmemar had owned in 2016 but had transferred without satisfying the bank's judgment. The bank sought to foreclose on these residential properties and sell them at a public auction, and it moved to join several parties who held an interest in them, including the current homeowners. Equity Bank asked the court to

4

find it had judgment liens on the properties that were superior to the rights of the other parties.

The current homeowners opposed Equity Bank's requests. Relevant here, the homeowners moved to quash Equity Bank's writ of execution, arguing that the bank's 2016 judgment was not a final, collectable judgment since "the Receivership claim asserted in the Petition" was never resolved or dismissed. Without a final judgment, the homeowners argued, Equity Bank's judgment did not prevent Pourmemar from selling the properties. Thus, they asserted, Equity Bank had no right to foreclose on their homes.

The district court held several hearings on this matter and eventually agreed with the homeowners. The court found that Equity Bank's request for a receiver was an independent claim for relief, and without resolving that claim, Equity Bank did not have a final, collectable judgment. The district court thus quashed the writs of execution against the homeowners' properties. Equity Bank now appeals, arguing the district court erred in ruling that the 2016 foreclosure order was not a final judgment.

DISCUSSION

A party who succeeds in obtaining a judgment may execute on that judgment 14 days after the judgment becomes *final*. See K.S.A. 2023 Supp. 60-262(a). A prevailing party may collect money or take other actions to enforce a final, nondormant judgment any time after this time frame has passed. These collection efforts can include executing judgments by foreclosing on the judgment debtor's properties, to the extent the law permits. A prevailing party can also file a judgment lien in any Kansas county where the judgment debtor lives; this lien then attaches to the judgment debtor's properties and must be satisfied before those properties can be sold. See K.S.A. 60-2202; K.S.A. 60-2418(a).

5

A final judgment disposes of the entire merits of the case and leaves no further questions or the possibility of future directions or actions by the court. *Plains Petroleum Co. v. First Nat. Bank of Lamar*, 274 Kan. 74, 82, 49 P.3d 432 (2002). In the context of a note and mortgage on real property, Kansas courts have explained that a judgment is considered final when "it determines the rights of the parties, the amounts to be paid, and the priority of the claims." *Bank IV Wichita v. Plein*, 250 Kan. 701, 707, 830 P.2d 29 (1992); *Stauth v. Brown*, 241 Kan. 1, 6, 734 P.2d 1063 (1987). This rule makes practical sense—if the district court makes these three determinations, there is nothing left for the court to do. The only "unfinished task [is] that of collecting the judgment." 241 Kan. at 4-5.

Practically speaking, this finality standard requires a district court to answer the three essential questions that arise when a mortgage is foreclosed:

(1) Who must be paid?
(2) How much should they be paid?
(3) In what order should they be paid?

In other words, a district court must determine who has a valid claim against the mortgaged property, how much the parties are entitled to, and the order of priority in which these claims get paid (an especially important question when the sale proceeds are unlikely to satisfy all the amounts owed).

Without answering each question, the parties cannot know the extent of the supposed judgment or begin collecting on it. See *Miller v. Rath*, 173 Kan. 192, 244 P.2d 1213 (1952). *Miller* illustrates this principle. There, the district court only determined that the judgment creditor had a higher priority than the judgment debtor and did not resolve the priorities of all the other parties with an interest in the property. Our Supreme Court concluded that this order was not a final judgment because the district court had not

determined whether any other parties had a claim to the sale proceeds, how much each party was entitled to receive, and the priority of all the creditors. 173 Kan. at 193.

Returning to the facts before us, Equity Bank's 2016 judgment—the foreclosure order and the accompanying default judgment against the remaining parties—was a final judgment under this definition. The district court determined that Equity Bank was entitled to foreclosure and sale of the 1333 Meadowlark property, that Pourmemar was personally liable to Equity Bank for over $2.82 million, and that Equity Bank held a mortgage lien against 1333 Meadowlark that was superior to all other interests. In other words, the 2016 judgment determined the rights of the parties, the amounts to be paid, and the priority of the claims. There was nothing left for the district court to decide that would have prevented Equity Bank from beginning to collect on its judgment.

The homeowners acknowledge that the 2016 judgment meets this definition. But they argue that it was not a final judgment for a different reason—because Equity Bank's petition included a request for a receiver, and that receivership remained pending. That is, the homeowners argue that because a receiver had been appointed, the receivership must be officially terminated or dismissed before Equity Bank could start enforcing its judgment against Meadowlark and Pourmemar. The district court found this argument persuasive. We disagree.

A receiver is an equitable tool a court can use to maintain the status quo by preserving property that is subject to litigation until the court can determine its rightful owner. See K.S.A. 60-1301. A request for a receiver is not a claim, in the traditional sense. Rather, appointment of a receiver is a provisional—or temporary—remedy available "before judgment and pending the action's disposition." See Black's Law Dictionary 1548 (11th ed. 2019) (defining "provisional remedy"). The fact that Equity Bank described its requests for a receiver as "counts" in its petition does not transform that provisional remedy into a claim for relief. In requesting the appointment of a receiver

7

for the Metcalf and Meadowlark properties, the bank was merely attempting to maintain and receive income from those properties while the lawsuit was pending. The district court erred when it found that the receiver was a pending claim that barred the finality of the 2016 judgment.

This error is compounded by the reality that the receiver became defunct when the district court issued its foreclosure order in 2016. Equity Bank requested the appointment of a receiver in its petition in 2014 to manage the Metcalf and Meadowlark properties and collect their rents while its lawsuit was pending. When the 2016 judgment was entered, the Metcalf property had been sold and the 1223 and 1301 Meadowlark properties had been transferred to Equity Bank through deeds in lieu of foreclosure. The 1333 Meadowlark property—the last property discussed in Equity Bank's petition—was ordered to be foreclosed and sold. After that, there was nothing left for the receiver to do. There were no properties for it to manage nor any rents to collect.

The 2016 judgment determined the rights of the parties, the amounts to be paid, and the priority of all claims with regard to the remaining Meadowlark property. The district court erred when it found that the receiver precluded that judgment from being a final, collectable judgment. We reverse the district court's ruling and remand for further proceedings consistent with this opinion.

Reversed and remanded.